(104 So. 232)

## WILSON v. WINDHAM. (6 Div. 377.)

(Supreme Court of Alabama. April 16, 1925.)

**1. Confusion of goods ⬚⇒9—Commingling of mortgaged crops by tenants held to amount to a fraud against mortgagee.**

Act of tenants who commingled their mortgaged crops amounted to a fraud against mortgagee, irrespective of how honest tenants may have been in their dealings with each other.

**2. Confusion of goods ⬚⇒9—Burden of separating commingled crops rested on tenants or their purchasers.**

Where tenants commingled their mortgaged crops, burden rested on tenants or their purchasers to separate crops on which there was a lien from those on which there was no lien.

**3. Landlord and tenant ⬚⇒250—Mortgage held to operate as assignment of landlord's lien to mortgagee.**

Where landlord and tenant had both given mortgages on crops to same mortgagee, such mortgages operated as an assignment to mortgagee of landlord's lien on crop raised by his tenant for the year covered thereby.

**4. Chattel mortgages ⬚⇒229(3)—Crop mortgage of subtenant held for jury, where subtenant and tenant commingled crops.**

In suit for destruction of mortgage lien on crops, where tenant, holding over, mortgaged crop, and subtenant gave crop mortgage to same mortgagee, mortgage of subtenant should have been submitted to jury on phase of evidence that crops were commingled by mortgagors without knowledge and assent of mortgagee, as to holding over by tenant, subrenting, and as to furnishing of supplies on the mortgages.

**5. Landlord and tenant ⬚⇒33—Parties to executory lease contract had right of waiver or modification without an additional consideration.**

Parties under a lease contract, before a breach had occurred and while it was executory and bilateral as to duties and obligations thereunder, had right of waiver or modification without an additional consideration.

**6. Landlord and tenant ⬚⇒90(2)—Obligations of tenant holding over referred to contract under which he held the previous year.**

If tenant after termination of lease held over, law raised relation of landlord and tenant, and in absence of evidence to contrary he was bound for rent under like contract by which it had held lands for previous year, and his continued possession thereof was referred to title under which it was then held.

**7. Chattel mortgages ⬚⇒229(3)—Admission of evidence tending to show termination of tenancy held not erroneous.**

In suit for destruction of mortgage lien on crops of tenant, who was holding over after expiration of his lease, admission of evidence tending to show termination of such tenancy was not erroneous.

---

⬚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Chattel mortgages ⊚⟹229(3)—Admission of evidence that landlord instructed tenant to deliver crop to defendant to pay for advances held not erroneous.**

In suit for destruction of mortgage lien on crops of tenant, admission of evidence that landlord instructed tenant to deliver crop to defendant to pay for advances made by him to such tenant to make the crop was not erroneous, since landlord could waive her prior lien in favor of defendant for such advances.

**9. Trial ⊚⟹142—Any adverse inference sufficient to prevent general affirmative instruction.**

Any adverse inference is sufficient to prevent a general affirmative instruction, however such inference may be introduced into the trial.

Appeal from Circuit Court, Lamar County; R. L. Blanton, Judge.

Action by A. S. Wilson against R. V. Windham. Judgment for defendant, and plaintiff appeals. Transferred from Court of Appeals under Acts 1911, p. 450, § 6. Reversed and remanded.

See, also, 206 Ala. 427, 90 So. 791; 210 Ala. 330, 98 So. 15.

Sowell & Gunn, of Jasper, and Wilson Kelley and Guy Redden, both of Vernon, for appellant.

It was error to deny admission of the Coleman mortgage. Ballard v. Mayfield, 107 Ala. 396, 18 So. 29; Gilliland v. Pond Bros., 189 Ala. 542, 66 So. 480; Burns v. Campbell, 71 Ala. 271; Leader v. Romano, 208 Ala. 636, 95 So. 7. Evidence as to instruction by Mrs. Atkins to J. W. Coleman to deliver the cotton to defendant was erroneously admitted. Wilson v. Windham, 206 Ala. 427, 90 So. 791. The affirmative charge was erroneously given for defendant. Mutual Life v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Brown v. Mobile Elec. Co., 207 Ala. 61, 91 So. 802; Pizitz v. Cusimano, 206 Ala. 689, 91 So. 779; Sloss Co. v. Jones, 207 Ala. 7, 91 So. 808; Penticost v. Massey, 202 Ala. 681, 81 So. 637; Brown v. Corona Coal Co., 208 Ala. 522, 94 So. 535; Letson v. Mutual Loan Co., 208 Ala. 285, 94 So. 288; Tilson v. Graham, 208 Ala. 312, 94 So. 295; Nat. Ins. Co. v. Hanner, 19 Ala. App. 47, 94 So. 259; Warrant Warehouse v. Cook, 209 Ala. 60, 94 So. 282.

J. C. Milner, of Vernon, for appellee.

Brief of counsel did not reach the Reporter.

THOMAS, J. The suit was for the destruction of a mortgage lien on crops. The defense was pleaded in short by consent, with leave to give in evidence the material facts. The general affirmative charge for defendant was given. This is the third appeal. Wilson v. Windham, 206 Ala. 427, 90 So. 791; Windham v. Wilson, 210 Ala. 330, 98 So. 15.

There is conflict in the evidence as to whether or not the Colemans kept separate the cotton picked from the respective tenancies. J. W. Coleman testified that their cotton and corn were placed in separate piles; the witnesses Caldwell and Murphy gave evidence subject to the inference that the same were not so separated. The cotton raised by the Colemans on the Atkins place was sold to appellee, R. V. Windham, and it is undisputed that the Colemans did not pay the rent for 1915.

The evidence shows that J. W. Coleman executed a mortgage on February 19, 1915, on his crops to A. S. Wilson, which was recorded February 22, 1915, and due on October 1, 1915, and no sum was paid thereon. The evidence further shows that L. C. Coleman executed a mortgage on February 16, 1915, to A. S. Wilson, which was recorded February 22, 1915, and due October 1, 1915, and no sum was paid thereon. The grantors made no other crop for 1915 than that raised on and gathered by them from the Atkins place and delivered to R. V. Windham. J. W. Coleman was living on the Atkins place when he executed his said mortgage, and L. C. Coleman was not living there when his said mortgage was executed, but had rented a portion of the land in question from his brother, and subsequently moved on the place.

Mrs. Atkins testified that both Colemans were her tenants for the year 1915, and there is a tendency of evidence to the effect that L. C. Coleman was a subtenant under J. W. Coleman, who, to take his version, held over and rented again from Mrs. Atkins.

[1-4] As to the mortgagee, Wilson, the commingling of the crops by the two brothers, the Colemans, if such there was, amounted in law to a fraud against him, however honest the brothers may have been in their dealings with each other. Leader v. Romano, 208 Ala. 635, 95 So. 7. And the burden of separation rested upon the mortgagor-tenants or their purchaser of the crops "on which there was a lien from those on which there was no lien." Leader v. Romano, supra. The "landlord," J. W. Coleman, and his tenant, L. C. Coleman, having given mortgages to A. S. Wilson, said mortgages operated as an assignment to Wilson of J. W. Coleman's lien (if such he had) on the crop raised by his brother, L. C. Coleman, for said year (Gilliland Merc. Co. v. Pond Bros., 189 Ala. 542, 66 So. 480; Ballard v. Mayfield, Pitman & Co., 107 Ala. 396, 18 So. 29), since the appellant, Wilson, held both mortgages. On the phase of the evidence that the crops of the respective mortgagors were commingled by them without the knowledge and assent of the mortgagee, and the phases of the evidence as to holding over by J. W. Coleman and the subrenting to L. C. Coleman and the furnishing of supplies on said mort-

gages, the L. C. Coleman mortgage should have been submitted to the jury. There was error in sustaining objection to the L. C. Coleman mortgage. Windham v. Wilson, 210 Ala. 330 (2), 98 So. 15. Both Coleman mortgages were considered as evidence in Wilson v. Windham, 206 Ala. 427, 90 So. 791.

[5, 6] The parties to the lease contract, before a breach had occurred and while it was executory and bilateral as to duties and obligations thereunder, had the right of waiver or modification, without an additional consideration, Moore v. Williamson, 104 So. 645.[1] Under that phase of the case there was a tendency of evidence by J. W. Coleman that, though he and Mrs. Atkins, by mutual agreement, terminated the lease in the fall of 1914 for a consideration of the reduction of the amount of rent for 1914, he remained on the land during 1915, and his brother, L. C. Coleman, lived thereon, "until after the crop was gathered" and "cultivated a part of it"; that said L. C. Coleman did not become a subtenant of his for the year 1915. If, after termination of the lease, said tenant held over the next year, the law raised the relation of landlord and tenant. In the absence of evidence to the contrary, he was bound for the rent under like contract by which he had held the lands for the previous year; and his continued possession of the lands or parts thereof was referred to the title under which it was then held. Formby v. Williams, 203 Ala. 14, 81 So. 682; McCarthy v. Nicrosi, 72 Ala. 332, 47 Am. Rep. 418; Windham v. Wilson, 210 Ala. 330, 98 So. 15.

[7, 8] There was no error in admitting the evidence tending to show the termination of that tenancy. So, also, there was no error in admitting defendant's evidence to the effect that the landlord, Mrs. Atkins, instructed J. W. Coleman to deliver the cotton to defendant, Windham, to pay for the advances made by him to said tenant or tenants to make the crop. The landlord could waive her prior lien in favor of such claim of the defendant for advances. Such "waiver" may only bind the parties thereto; if a transfer of the superior lien of the landlord, it would affect the rights of third parties dealing with the crops.

[9] The rule governing the giving and refusal of general affirmative instructions was recently reviewed. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; Wilson v. Windham, 206 Ala. 427, 90 So. 791; Schrimscher v. House, 207 Ala. 334, 92 So. 448; Penticost v. Massey, 202 Ala. 681, 81 So. 687. Any adverse inference is sufficient to prevent such instruction, however the same may be introduced into the trial. Jones v. Bell, 201 Ala. 336, 77 So. 998. The mortgage of J. W. Coleman, the tenancy vel non of said Coleman, the tendency of evidence of the commingling of the crops without the knowledge or consent of the mortgagee, the relation of the Colemans to Mrs. Atkins, and the nature of her lien for the rents, or of her waiver or transfer of said lien to Windham, were sufficient to raise an adverse inference against the person requesting the general affirmative charge. Such is the result, if it be conceded that there was no error in excluding the L. C. Coleman mortgage—a jury question was presented under the foregoing tendencies of the evidence.

If Mrs. Atkins became responsible for the advances when made, she could transfer that lien for advances made within the statute. If she had no lien for advances, she could transfer her lien for rents, in which event the transferee would stand in the place of superiority of the landlord as against all liens, except for taxes. In Mrs. Atkins' depositions she testified that she was not so responsible. She further testified that she was requested to sign a note to Windham for the advances; that she did not sign the note; that "Marvin Reed said he would sign it" for her; that she did not remember whether she "told him [Reed] to sign it or not," but she did not think she "said anything"; that she "signed a paper to let Mr. Windham collect his account before" rents were collected by her; that she instructed that the crops be delivered to Windham. On the other hand, if the landlord, Mrs. Atkins, merely waived her superior right in favor of Windham, and that transaction did not amount to a transfer of the lien for rent, it could not give Windham a right superior to that of the mortgagee.

The foregoing are questions of fact which are left to inferences which might be drawn by the jury.

The affirmative charge, being given at defendant's request, necessitates a reversal of the judgment.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.