(105 So. 666)

### E. T. GRAY & SONS v. SATULOFF BROS.
### (8 Div. 781.)

(Supreme Court of Alabama.   Oct. 15, 1925.)

**1. Sales ⬥88—Contract evidenced by telegrams to be construed by court.**

Contract for sale of poultry, evidenced by series of telegrams between parties, was contract in writing to be construed by court.

**2. Sales ⬥88—Dispute as to existence of certain telegrams relating to contract held to present question for jury.**

In action on contract for sale of poultry, dispute as to existence of certain telegrams relating to transaction presented question for jury, in so far as such telegrams affected rights of parties.

**3. Appeal and error ⬥927(7)—On review of affirmative charge for defendant plaintiffs' evidence taken as true.**

In action on contract for sale of poultry, plaintiffs' version as to existence and receipt of disputed telegrams relating to transaction must be taken as true on appeal, in passing on ruling granting affirmative charge for defendants.

**4. Sales ⬥202(6)—Shipment on draft with bill of lading attached is retention of right in seller until draft is paid.**

Although there may be binding contract to buy, and all preliminaries, such as inspection, grading, weighing, fixing aggregate price, acceptance for shipment by carrier, and caretaking en route, may be done, shipment on draft with bill of lading attached retains title in

---

seller until draft is paid, and carrier, as bailee, may not deliver to consignee until bill of lading is released by payment of draft.

**5. Sales ☞202(6)—On shipment on draft with bill of lading attached, title remains in seller until payment of draft, regardless whether bill of lading names seller as consignee with assignment to buyer on payment of draft or names buyer as consignee and is sent through banking channels.**

Whether bill of lading names seller as consignee with assignment to buyer, effective on payment of draft attached, or names buyer as consignee, and is sent through banking channels to be delivered on payment of attached draft, title remains in seller, and no right of possession is in buyer until draft is paid.

**6. Contracts ☞236, 237(2), 249, 253, 255, 256—While transaction is in fieri or contract executory, parties, by mutual assent may abandon transaction, rescind contract, or modify or alter terms of contract; no consideration necessary other than mutual assent.**

While transaction is in fieri, or contract is executory, parties, by mutual assent, may abandon transaction or rescind contract, or may modify or alter terms of contract, and no other consideration is necessary than their mutual assent.

**7. Contracts ☞237(1)—Consideration for executed modified contract is immaterial.**

When modified or substituted contract is fully executed by performance of terms thereof by both parties, question of consideration for new contract becomes immaterial.

**8. Sales ☞89—Final agreement by sellers of poultry to reduce price, accepted by buyer, constitutes fully executed contract.**

Without regard to party at fault in controversy as to price to be paid for poultry, final agreement of sellers to reduce price, followed by acceptance of shipment by buyer and payment of draft on agreement of sellers to refund certain amount, constituted fully executed contract, closing dispute as to terms of original contract.

**9. Sales ☞89—Sellers of poultry, knowing all facts at time of agreeing to refund part of payment on draft attached to bill of lading, held not to have been induced to act by fraud or coercion.**

Where sellers of poultry knew all facts at time of agreement to refund disputed amount of price to be paid on purchasers' paying draft attached to bill of lading, mere fact that they found themselves at disadvantage and liable to suffer loss if purchasers did not pay draft and accept shipment is not coercion in law, or fraud permitting them to recover amount refunded from buyer.

**10. Contracts ☞94(1)—Fraud to infect modified contract, must be fraud in procurement thereof.**

Fraud, to infect modified contract, must be fraud in procurement thereof.

**11. Estoppel ☞78(1)—Sellers of poultry contracting to refund part of amount of draft attached to bill of lading held estopped to say that agreement was made because other party thereto had obtained unjust advantage.**

Where sellers of poultry, to get buyer to accept shipment, with full knowledge of facts, agreed, if buyer would pay draft attached to bill of lading, to refund certain amount, in action by them against buyer to recover such refund, they were estopped to say agreement was merely colorable and made because buyer had obtained unjust advantage through possible loss to sellers if he did not accept shipment.

Appeal from Circuit Court, Limestone County; James E. Horton, Judge.

Action by E. T. Gray & Sons against Satuloff Bros. Judgment for defendants, and plaintiffs appeal. Transferred from Court of Appeals under Code, 1923, § 7326. Affirmed.

The suit is to recover an alleged balance due upon a carload of poultry sold by E. T. Gray & Sons, Athens, Ala., to Satuloff Bros., Buffalo, N. Y.

Pleas were the general issue, payment, accord and satisfaction, release, and estoppel. The court gave the general charge for defendants. This ruling presents the main issue on appeal.

The essential facts upon this issue are briefly these:

By exchange of telegrams, Gray & Sons sold to Satuloff Bros. a carload of poultry to be loaded out during the week ending Saturday, May 10, 1924. The purchasers were directed to send a "carman" to Decatur Thursday, the 8th. Jesse Kyser, a carman, was sent and arrived in Decatur Thursday night. The poultry was assembled at Cullman, Decatur, Athens, and Pulaski. Loading began at Cullman Friday. The duties of the carman were to inspect the poultry, supervise weighing and loading, and accompany the car as caretaker. On Saturday, May 10th, Mr. Kyser wired Satuloff:

"On account of train movement will be impossible to load more than ten thousand to-day; will have plenty of tonnage at all points; can load and move Monday."

On the same date Satuloff wired Gray:

"Our man wired us can't loading car until Monday. We bought car this week's shipment. What are you going to do about it."

Several telegrams followed, resulting in advice from Satuloff to Gray that the latter could pay the carman's expenses and send him home, or could reduce the price 1½ cents per pound, and load out Monday, to which Gray replied:

"If not satisfactory to wait until Monday, you can refuse car, we are not paying anything."

Meantime, on the same date, other telegrams passed between Kyser and Satuloff,

closing, according to plaintiffs' evidence, with a message to Kyser at 7:34 p. m., saying:

"Finish loading Monday."

Defendants deny sending this message. They also claim to have sent to Gray a message on Monday, the 12th, saying: ·

"You pay man's expense, will let him come home, or you'll have reduce price cent and half pound on account week after next our market will be lower."

Plaintiffs deny receiving this message. Plaintiffs and Kyser did finish loading Monday, the 12th, and the car was consigned to Satuloff at Buffalo, N. Y., upon draft for full contract price with bill of lading attached. Upon receipt of invoice, May 15th, Satuloff wired:

"We will not accept this car unless you reduce one and half cent on fowls, or you can make other disposition by paying carman's expenses."

Gray replied:

"We have copy your wire to Kyser your carman to take up poultry Monday we wired you Saturday we didn't own railroads and if not satisfactory to refuse car if you want to turn down it is up to you if any loss take up with railroad if had gotten the car out three days earlier the market no better shape don't pull any little stuff, Kyser will explain situation advise."

Satuloff wired on the 16th:

"Car is here for your disposition. We will not unload."

Gray replied same date: ·

"You have advantage of us; pay draft; draw on us for difference; having our bank guarantee payment."

Satuloff paid the draft for full invoice, and made draft for difference of 1½ cents per pound, $245.29. This draft was paid to the Athens bank, and the fund immediately attached in this suit. Plaintiffs' representative explains:

"I wanted to get the money down here when I wired them, in place of with the bunch of Jews in New York; * * * wanted to get in Alabama and attach it. They had my car of poultry in New York after they gave their carman instruction to load the poultry. I did it to protect Gray & Sons."

Other details of telegrams disclaiming responsibility for failure of trains to move, and evidence on the trial that the carman refused to work at night, that such was customary when necessary, that he was expected Thursday morning, etc., need not be further set out.

**J. G. Rankin**, of Athens, for appellants.

A contract by which a creditor accepts a less amount than that admitted to be due by the debtor, and gives a receipt in full, discharging the debtor, is a nude pact, and void for want of consideration; mutual assent is not enough. Scott v. Rawls, 159 Ala. 399, 48 So. 710; Abercrombie v. Goode, 187 Ala. 310, 65 So. 816; Hodges v. Tenn. Dev. Co., 123 Ala. 572, 26 So. 490; Holloway v. Talbot, 70 Ala. 389; Montgomery Co. v. New Farley Bank, 200 Ala. 170, 75 So. 918; Shriner v. Craft, 166 Ala. 146, 51 So. 884, 139 Am. St. Rep. 19, 28 L. R. A. (N. S.) 450. For payment of less amount than that due to operate as accord and satisfaction, it must appear there was a bona fide contention by the debtor that the amount paid was all that was due. Ex parte Sou. Cot. Oil Co., 207 Ala. 704, 93 So. 662. A seller may sell to defaulting buyer on different terms, if care is taken not to waive damages for breach. It is the duty of the seller to minimize the damages by selling to defaulting buyer. 2 Williston on Sales (2d Ed.) 1373; New Bluegrass Can. Co. v. Dougan, 151 Ky. 522, 152 S. W. 566; Curjel v. Hallett Mfg. Co., 198 Ala. 609, 73 So. 938; Borden & Co. v. Vinegar Bend Lbr. Co., 2 Ala. App. 354, 56 So. 775; Lawrence v. Porter, 63 F. 62, 11 C. C. A. 27, 26 L. R. A. 167. Acceptance after time of delivery does not waive right to damages, unless circumstances show intention to waive or if circumstances show compulsion. 23 R. C. L. 268.

**R. B. Patton**, of Athens, for appellees.

Where a party has an election to affirm or disaffirm a transaction, and he elects the one, he is afterwards estopped from doing the other. Goetter v. Norman, 107 Ala. 585, 19 So. 56; Clanton v. Scruggs, 95 Ala. 279, 10 So. 757; Kahn v. Peter, 104 Ala. 523, 16 So. 524; McIntosh v. Hill, 212 Ala. 136, 102 So. 102; Tobias v. Morris & Co., 126 Ala. 535, 28 So. 517. After one contract is voluntarily entered into as a substitute for another, and has been fully performed, the original contract is completed and extinguished. McCabe Const. Co. v. Utah Const. Co. (D. C.) 199 F. 976; Munroe v. Perkins, 9 Pick. (Mass.) 298, 20 Am. Dec. 475. There was accord and satisfaction in this case. Brown v. Lowndes County, 201 Ala. 437, 78 So. 815.

BOULDIN, J. [1] The contract, evidenced by a series of telegrams between the parties was a contract in writing, to be construed by the court.

[2] The existence of certain telegrams relating to the transaction being in dispute, a question for the jury was presented, in so far as such telegrams may affect the rights of the parties.

[3] The affirmative charge being given for defendants, the plaintiffs' version of the existence and receipt of such disputed messages must be taken as true, in passing upon such ruling. The plaintiffs' theory is that the instruction to the carman to load out Monday was a waiver of the delay, an acceptance of the poultry at the contract price, and nothing remained but an obligation to

pay on arrival at Buffalo; that there was no consideration for a release of a part of the purchase price, no bona fide dispute as a consideration for a compromise; that the promise to reduce the price was a nudum pactum; and the defendants still owe that balance.

We think the case does not require a consideration of the many rules of law relied upon in support of these contentions.

[4] A shipment upon "draft with bill of lading attached" is a retention of title in the seller until the draft is paid. . The carrier, as bailee, may not deliver to the consignee until the bill of lading is released by payment of the draft. It is a method of concluding the sale for cash at a distant point. There may be a binding contract to buy. All preliminaries, such as inspection, grading, weighing, fixing aggregate price, acceptance for shipment by the carrier, and caretaking en route, may be done, but until the price is paid no delivery from the carrier to the consignee is due, and the transaction, as a completed sale, is still in fieri.

[5] Whether the bill of lading names the seller as consignee, with assignment to the buyer, effective upon payment of the draft, or names the buyer as consignee and is sent through banking channels to be delivered on payment of the attached draft, in either event the title remains in the seller, and no right of possession is in the buyer until the draft is paid. Armstrong v. Wilcox, 207 Ala. 390, 92 So. 645; L. & N. R. Co. v. Sarris, 209 Ala. 217, 95 So. 903; Veitch v. Atkins Grocery Co., 5 Ala. App. 444, 59 So. 746; Robinson v. Pogue, 86 Ala. 257, 5 So. 685.

[6] While a transaction is in fieri, or a contract is executory, the parties by mutual assent may abandon the transaction, or rescind the contract, or they may modify or alter the terms of the contract. No other consideration is necessary than the mutual assent of the parties. Dickey v. Vaughn, 198 Ala. 283, 73 So. 507; Elliott v. Howison, 146 Ala. 568, 40 So. 1018; Hembree v. Glover, 93 Ala. 622, 8 So. 660; Wellden v. Witt. 145 Ala. 605, 40 So. 126; Mylin v. King, 139 Ala. 319, 35 So. 998; 13 C. J. 593.

[7, 8] When a modified or substituted contract is fully executed by the performance of the terms thereof, by both parties, the question of consideration for the new contract becomes immaterial. Even a gift cannot be recalled, when fully executed. . A chose in action may be the subject of a gift as other property. This may include a debt due from the donee to the donor. 28 C. J. 666. Without regard to the party at fault in the controversy up to the arrival of the car at Buffalo, the final agreement to reduce the price,

213 ALA.—34

followed by acceptance of the shipment, payment of the full price upon agreement to refund the amount here sued for, and this followed by actual payment of the refund, constituted a fully executed contract, and the transaction was closed. The situation is not altered, if we agree with plaintiffs that there was a binding agreement to receive the poultry and pay the full price, and defendants refused so to do. Plaintiffs had the election to stand on their contract, dispose of the poultry, and look to the defendants for resulting damages.

A new sale to the defaulting purchaser to minimize the damages would not defeat such action. But such is not this case. The transaction in writing shows an express purpose to modify the contract, to substitute the new price for the old, and this agreement was executed.

[9] Plaintiffs seem to have proceeded on the view that defendants had wrongfully sought and obtained an advantage of position, and the agreement to reduce the price obtained by fraud or coercion.

[10] It may be the testimony would afford an inference for the consideration of the jury to the effect that defendants, by instructions to Kyser, contemplated getting the poultry in Buffalo, with no bona fide purpose to pay the full price, but an advantage of position. It is no doubt the law that fraud in the procurement of a modified contract infects the transaction as any other; but it must be fraud in the procurement of the modified agreement. Here the facts were all known to plaintiffs at the time they agreed to refund the difference in price. The mere fact that they found themselves at a disadvantage, and liable to suffer loss, is not coercion in law.

The frank admission of plaintiffs that there was no intent to reduce the price, but to regain their position of vantage by making an agreement they did not intend to execute, and to go through the form of compliance by paying over the money and then reclaiming it, discloses business dealings having no sanction in the law. One wrong cannot be redressed by another.

[11] The debt here sued for in essence is the money paid to defendants in execution of a contract made with full knowledge of the facts. Plaintiffs are estopped to say the agreement was merely colorable and made because the other party had obtained an unjust advantage.

Affirmed.

SOMERVILLE, THOMAS, and MILLER, JJ., concur.