54 So.2d 701

**SPRY v. PRUITT.**
**8 Div. 524.**

Supreme Court of Alabama.
Oct. 18, 1951.

342

Bradshaw & Barnett, Florence, for appellant.

Orlan B. Hill and Mitchell & Poellnitz, all of Florence, for appellee.

LAWSON, Justice.

This is a controversy over the amount of rent due by Tom Pruitt to S. L. Spry for farm land situate in Lauderdale County, which Spry leased to Pruitt for the crop year 1947 and which land was cultivated by Pruitt.

The following written contract was entered into by the parties:

"State of Alabama

County of Lauderdale

"This contract made and entered into at Rogersville, Alabama this 28th day of October 1946. By and between S. L. Spry, party of the first part and Tom Pruitt, party of the second *part*.

"Witnesseth:

"That for and in consideration of the mutual covenants of the parties hereto, they do contract as follows; The party of the first part does hereby lease to the party of the second *party* that *track* or lot of land situated in Lauderdale County, State of Alabama known and described as part of the P. H. Perry farm and the M. M. Striplin farm and farther described and known by the A.A.A. program as farm No. B.96.

"The party of the first *party* leases said *track* of land as above stated and a *plott* or drawing hereto attached and signed by both parties, said *plott* or drawing becomes a part of this contract. The party of the first part does hereby lease said *plott* of land to the party of the second *party* for the sum of Thirty-five (35) bales of cotton, ginned cotton bales averaging five hundred (500) pounds per bale and said cotton being the first cotton gathered or picked on said land also cotton seed out of 17½ bales of cotton, seed to be left at gin by the party of the second *party*. Party of the second *party* to notify party of the first *party* when and where to take possession of cotton and seed as it is being gathered in the year 1947.

"Signed party of first *party*

S. L. Spry
<u>S. L. Spry</u>

"Signed party second *party*

Tom Pruitt
<u>Tom Pruitt</u>"

Attached to the contract is a plat or rough sketch wherein the leased land is enclosed within a red border, but there are no dimensions shown.

On April 14, 1948, Tom Pruitt filed this suit against S. L. Spry in the circuit court of Lauderdale County, in equity.

After alleging the execution of the contract above set out, complainant averred that respondent Spry represented the land rented to him to be 200 acres. Complainant then alleges that after the execution of said contract, it became apparent to the parties that said contract resulted from a misunderstanding and mutual mistake and the misrepresentation on the part of respondent as to the area of the tract of land, and that as a result of conplainant's "denouncement of said contract on the basis of such mutual mistake and misrepresentation an oral contract was made between the parties which in substance was a modification of the terms of said signed paper writing." As to this alleged oral contract, the bill alleges: "By the terms of said new agreement it was understood between the parties that complainant would make a crop on the premises specified in said paper writing and would pay to defendant as rental an amount of 'cotton seed properly proportioned according to the actual area of the lands in possession of complainant for farming purposes which was so delivered by defendant; the rent to be proportioned against the actual area later to be determined as compared with the rent named in said writing for a tract of 200 acres."

The bill further alleges, in substance, that complainant proceeded to cultivate the lands during the crop year 1947, and has had the land accurately surveyed by a competent surveyor and the number of acres in the plot was found to be a fraction less than 100.

It is alleged in the bill that there is a justiciable controversy between complainant and defendant with respect to the contract between the parties and the amount of rental due at that time, in that defendant denies there was any agreement other than the written contract.

The bill further alleges that on April 13, 1948, complainant tendered to respondent warehouse receipts for stored cotton and an order for cottonseed which was also stored, together with the sum of $30.97, all of which make up the amount of rental actually owing by complainant to respondent. Upon the filing of the bill of complaint, complainant tendered into court the said warehouse

receipts and order for cottonseed and the money, to be taken and accepted by respondent in full settlement and satisfaction of any and all demands by respondent against complainant on account of rent of said lands.

The bill, as amended, prayed: (1) " * * * that the court will declare and determine that the true contract between the parties for the rental of lands for the year 1947 involves the payment by complainant to defendant of rent according to the area of the land actually rented and delivered by defendant to complainant and in proportion as the amount of such area shall bear to an area of 200 acres, the amount of rent to be related to the actual area as specified in this bill"; (2) "that the court will ascertain and declare that the tenders heretofore made by complainant to defendant and now made with the Register of this Court are an actual and complete compliance with his duty and liability under his said rental contract with S. L. Spry"; (3) "that the actual measurement of the lands so rented to complainant by defendant constitutes 99.7 acres"; (4) "that the court will ascertain and declare by decree what rental is owed by complainant to defendant for the use in the year 1947 of the lands described in the bill." The bill also prayed for general relief.

The complainant demanded a jury to try the issues of fact in the cause.

Demurrer to the bill as amended was overruled on August 28, 1948.

On September 1, 1948, the trial court entered the following order: "Complainant having demanded a trial by jury of the facts in this cause, it is by the court ordered, adjudged, and decreed that this cause be, and the same is hereby, referred to a jury of the law court now sitting for a decision of the factual issues in the case; such decision to be made on issues to be submitted by the court to the jury."

Thereafter, on September 7, 1949, the respondent filed his answer, in which he set out in extenso the written contract under date of October 28, 1946. The respondent averred in his answer that there was no contract between the parties other than the

written contract set out, and also averred that the complainant made no effort to cultivate all the lands which he rented from respondent for the year 1947 and that complainant well understood the lands he had rented from respondent, inasmuch as he went over and observed the lands before he rented the same. Respondent averred that he was not advised as to the allegation in the complaint, "A true measure of said land determines the amount of land so rented to complainant by defendant to be a fraction less than 100 acres," and averred that if the survey was of only the land which complainant actually cultivated, then it was not a full and complete survey of the land actually rented. Respondent denies there was any mistake, mutual or unilateral, as to the lands which he rented to complainant and denied that he made any misrepresentation to complainant about said lands. In regard to the averments of the bill of complaint relative to a tender, the answer avers that papers were tendered to him in the office of one of the attorneys for complainant, but that he (respondent) refused the papers offered, since he was not advised as to their legal effect and since he had not had the opportunity to consult his attorney with reference to them. Respondent alleged in his said answer that there is no real controversy between the parties and that he, the respondent, is entitled to the rent as provided in the written contract of October 28, 1946.

After the attorneys for the respective parties had made their opening statements to the jury, the trial court instructed the jury as follows:

"Gentlemen of the Jury, this is an action under what the law calls the Declaratory Judgment Statute incorporated in our Code of Laws in Alabama; that law says any person or persons interested under a contract where there is a dispute as to what the contract rights are between them may come into Court and get a declaration of what their rights are or what their status is; that is what this case is about.

"It is the duty of the Court to state to you the issues of fact, that is, the question of fact for you to decide.

"There are three questions or issues. First, you will decide whether the rental

agreement or contract by which Mr. Pruitt rented land from Mr. Spry was modified or changed by later agreement between them which was made allegedly as an oral agreement, and you will decide whether or not that first agreement was changed by a later oral agreement to provide that Mr. Pruitt would not owe the 35 bales of cotton and cotton seed from 17½ bales of cotton as allegedly stated in the first written agreement but that Mr. Pruitt would owe the rent on the basis of whatever number of acres were rented to him as compared with 200 acres. The second issue or question for you to decide, gentlemen, is whether or not Mr. Pruitt has offered or tendered to Mr. Spry heretofore a correct payment of rental to Mr. Spry under their agreement or agreements for the crop year 1947. The third question or issue for you to decide, gentlemen, is that if you are reasonably satisfied from the evidence in the case that the amount of rent tendered or offered in Court to Mr. Spry by Mr. Pruitt, if that was not correct, then you, Gentlemen of the Jury, will declare by your verdict what amount of rent is owed Mr. Spry by Mr. Pruitt."

The jury returned the following verdict: "We, the Jury, find that the rental contract by which Pruitt rented land from Spry was modified by an oral agreement which became a new contract providing that Pruitt would owe rent not according to the written rental contract but on the basis of the actual number of acres which were rented to him as compared with 200 acres. We further find that Pruitt has tendered to Spry and to the Court a correct payment of rental to Spry for the crop year 1947; that is, 17½ bales of cotton and cotton seed out of 8¾ bales."

This verdict was in the language of one of the forms of verdict which the trial court submitted to the jury.

The respondent filed a motion on the law side of the docket to vacate and hold for naught the verdict of the jury on stated grounds. This motion was overruled on May 7, 1949. Thereafter the trial court entered an order re-transferring the cause to the equity side of the court. Thereafter the respondent filed what is termed a mo-

tion for new trial on the equity side. This motion was overruled on May 20, 1949.

The trial court entered a decree, in pertinent part as follows:

"(1) The court has jurisdiction of the cause and accepts jurisdiction and there is a justiciable controversy between the parties; and at the time the bill was filed no other suit was pending to determine the issues made by the bill.

"(2) The allegations of the bill are true and complainant is entitled to recover by way of declaratory judgment.

"(3) And the court further ascertains, decrees and declares as follows, to wit: That the contract of rental between the parties to this cause, as set out in the original bill and answer, was modified by mutual agreement between the parties which modified agreement became a new contract, by the terms of which complainant would owe rent to defendant in proportion to the rent provided in the written contract as the amount of lands delivered by defendant to complainant for occupation compares with 200 acres of land; and that complainant is indebted to defendant for rent on such basis in the amount of, to wit; 17½ bales of cotton and cotton seed out of 8¾ bales and that complainant has tendered to defendant and has tendered into court (now deposited with the Register of this Court) a correct payment of such rental."

From such decree the respondent, Spry, has appealed to this court.

Complainant's theory of recovery in this case is predicated on the idea that under the original contract he was to receive approximately 200 acres of land. There is no reference in that contract to the number of acres involved. The rough drawing or sketch which was made a part of the contract contains no dimensions which tend to show the number of acres intended to be leased.

However, on this appeal, we must accept complainant's contention that it was the intention of the parties under the original contract that complainant was to receive approximately 200 acres of land as true. Complainant was permitted to so testify without objection. Respondent, in response

to questions propounded by his own counsel on direct examination, testified that he made such a representation to the complainant, and from his testimony it seems clear to us that he has admitted that such was the agreement between the parties. In a large measure, the testimony offered by the respondent went to show that the acreage included in the drawing which was made a part of the contract contained approximately 200 acres.

Complainant's contentions are: (1) that respondent represented to complainant that he was renting to complainant approximately 200 acres of land; (2) that when complainant began to break the land in March, 1947, he discovered the acreage to be much less; that he advised respondent of the discrepancy and told respondent that he, complainant, would not farm the acreage which he actually had and pay therefor the rent specified in the written contract; (3) that upon being so advised, respondent entered into an agreement with complainant whereby respondent agreed to rent the land to complainant and complainant agreed to pay to respondent as rental an amount of cotton and cottonseed as provided in the original contract when properly proportioned according to the actual area of land in possession of complainant.

Respondent's contentions are: (1) that he is entitled to rent in accordance with the terms of the written contract; (2) that the land which he delivered to plaintiff contained approximately 200 acres, as he had represented to complainant. Respondent concedes that complainant made complaint as to the number of acres delivered at the time and in the manner as complainant contended. But respondent denied that he ever agreed to a modification of the original contract or that he entered into a new or substituted contract with complainant. According to respondent, his only reply to complainant upon complaint being made about the acreage was to tell complainant to go ahead and farm the land and he, respondent, would do the right thing.

The evidence offered by the parties tended to support their respective contentions. Under the evidence, it was for the jury to say whether or not in March, 1947, the parties mutually agreed that complainant was to farm the acreage of which he was actually in possession and that as a consideration therefor complainant was to pay respondent as rental an amount of cotton and cottonseed as provided in the original contract when properly proportioned according to the actual area of land in possession of complainant. This issue of fact was resolved in favor of the complainant.

Appellant insists that even though it be said the jury could have found that he entered into such an agreement in March, 1947, that as to him it was not supported by any consideration and was therefore a *nudum pactum* and possessed no binding force. We cannot agree with this insistence.

■ The rule now seems to be settled in this state that so long as the contract is executory, the parties are at liberty to modify it at pleasure without any consideration other than their mutual consent.

Mr. Justice Foster, writing for the court in Spencer v. Richardson, 234 Ala. 323, 325–326, 175 So. 278, 279, said as follows:

"But assuming that the situation between them as to the binding force of the contract was the same as though they had named November 1st as the date when the rent was to be paid, we think that at any time before then the parties could modify that contract as to the date of maturity by mutual agreement, without further consideration than that it should be substituted for the old contract, provided no rights of third persons have intervened, when as so modified the parties continue to act upon it as their contract. Such a modification is sometimes supported on the ground that thereby it is a substitution for the old one, and the extinguishment of the old contract as the result of the new one is a sufficient consideration—sometimes called a 'novation.' Montgomery Bank & Trust Co. v. Jackson, 190 Ala. 411, 67 So. 235; McDonnell v. Alabama Gold Life Ins. Co., 85 Ala. 401, 414, 5 So. 120.

"In other cases, it is said that the rule is settled in Alabama, that so long as a contract is executory the parties are at liberty to modify it at pleasure without new con-

sideration, other than their mutual consent. May v. Robinson, 221 Ala. 570, 130 So. 81; Gray & Sons v. Satuloff Bros., 213 Ala. 526, 105 So. 666; Moore v. Williamson, 213 Ala. 274, 104 So. 645, 42 A.L.R. 981; Wilson v. Windham, 213 Ala. 31, 104 So. 232; George v. Roberts, 186 Ala. 521, 522(4), 65 So. 345; Elliott v. Howison, 146 Ala. 568(10), 40 So. 1018; Hoffman v. Moreman & Webb, 184 Ala. 220, 63 So. 942; Messer v. Dupuy-Burke Realty Co., 226 Ala. 438, 147 So. 193.

"There may be peculiar situations in respect to different contracts which seem to be exceptions to this rule. But an analysis of each such case will demonstrate that there is some feature to show that it is either not an executory contract, or that liability on it had matured, or that it was improperly procured, or that it was not in substance and effect intended as a substitution for the former contract, and that it was not mutually acted on. But whether in all cases there is complete harmony, we think the rule is now settled in Alabama, as we have stated it. We have not overlooked Shriner v. Craft, 166 Ala. 146, 51 So. 884, 28 L.R.A.,N.S., 450, 139 Am.St.Rep. 19; Donnelly v. House, 160 Ala. 325, 49 So. 324; Hart v. Coleman, 192 Ala. 447, 68 So. 315; Id., 201 Ala. 345, 78 So. 201, L.R.A.1918E, 213."

The rule in Spencer v. Richardson, supra, has since been followed. Commercial Credit Co. v. Perkins, 236 Ala. 616, 184 So. 178; Raleigh Realty Co. v. Lagomarsino, 237 Ala. 315, 186 So. 692; Jeff D. Jordan & Co. v. Yancey & Abernathy, 242 Ala. 385, 6 So.2d 473; Cowin v. Salmon et al., 244 Ala. 285, 13 So.2d 190; Bonie v. Griffin, 252 Ala. 299, 40 So.2d 870.

■ We observe, however, that the evidence in this case was not only sufficient to support a finding of mutual consent, but, also, to justify a finding that there was a new consideration for respondent's agreement that the rent be paid in accordance with the acreage. As before indicated, the evidence in this case is undisputed to the effect that it was the intention of the parties under the original contract that complainant was to receive approximately 200 acres. Under the new contract or modification of the old contract, respondent was relieved of any contractual obligation to furnish any specified acreage.

■ The fact that in the agreement of March, 1947, there was no mention of the exact acreage involved or the exact amount of rental to be paid did not make the agreement or contract void for uncertainty. Both parties understood the exact tract of land involved. The acreage with the tract could be easily ascertained and, when ascertained, the rental to be paid was solely a matter of mathematical calculation.

Under the evidence, the jury was fully warranted in finding that the acreage of which complainant was put into possession was approximately 100 acres and that the tender which complainant made to respondent was sufficient under the terms of the agreement of March, 1947.

■ One of the attorneys for complainant, during his argument to the jury said: "Maybe a man in the funeral business—it wouldn't hurt him to pay $6,000 rent." The evidence showed that respondent was in the funeral business and that the amount of rent which respondent claimed for the land was approximately $6,000. Counsel for respondent objected and moved to exclude the statement. In response the trial court stated, "That's excluded, gentlemen." Counsel for defendant sought no other ruling or action on the part of the trial court. We can see no reversible error in this connection. The ruling of the trial court was in appellant's favor and apparently satisfied counsel for appellant at the time it was made. It is insisted here that such argument was so prejudicial that it could not have been eradicated. There is no reference in the argument to the financial worth of respondent. As before shown, he was in the funeral business and was claiming approximately $6,000 as rent.

■ Nor do we think reversible error is made to appear in regard to the argument of counsel for complainant to the effect that respondent said, "I will collect to the last drop of blood." The motion of counsel for respondent to exclude the statement was sustained. No further ruling of the trial court was sought to be invoked.

■ As before indicated, at the beginning of the trial the trial court stated to the jury the issues or questions of fact for their decision. As outlined by the trial court, and as heretofore pointed out, these issues, briefly stated, were: (1) Had the original contract been modified or a new contract entered into? (2) If so, was the amount which complainant claimed he tendered to respondent and which he had paid into court the amount which he owed respondent under the modified or new contract? (3) If there was a modified or new contract and the amount tendered was not the correct amount, then what amount did complainant owe respondent? Defendant did not voice any objection to this procedure, but did object to submitting the third issue only. As we view the case, all these questions were for the jury's determination. If the jury found that a subsequent rental agreement had been entered into and that the amount which complainant contended he owed under that agreement was not correct, then it was a factual question for the jury's determination as to the amount which was actually due. This question could only be resolved by a finding as to how much acreage was actually delivered by respondent to complainant, and the evidence on this point was in sharp conflict.

■ The trial court prepared verdicts responsive to the several issues, which he instructed the jury they could use if they saw fit to do so. We can see no error in this connection. There is nothing in the action of the trial court in this regard which we construe as indicating to the jury which form of verdict they should use, or that they should return a special verdict rather than a general verdict. In fact, it clearly appears that these forms were merely prepared for the convenience of the jury. They were so instructed and were told that they were to be used only if they saw fit to do so. In Foster v. Johnson, 70 Ala. 249, relied upon by appellant, the jury was instructed that if they found certain facts "their verdict must be" in a prescribed form.

■ During the argument of one of counsel for complainant, he stated that complainant claimed respondent had fraudulently misrepresented the acreage included in the tract of land. The bill of complaint did charge the respondent with misrepresentation, but it was not alleged that the misrepresentation was fraudulently made. However, no objection was interposed to this argument. In charging the jury, the trial court, in stating the contention of complainant, said that he contended the respondent fraudulently misrepresented the acreage to him. To this statement respondent excepted. In response thereto, the trial court said, "Let the record show the word was used by Mr. Orlan B. Hill in his argument to the jury." We do not think the case should be reversed because of this statement of the trial court, in view of the fact that counsel for complainant had been permitted to state to the jury that such was the contention of the complainant, without objection.

A number of rulings of the trial court adverse to respondent are argued here together as showing bias or prejudice on the part of the trial court toward the respondent. It is not argued that the trial court was consciously attempting to prejudice the jury in favor of complainant and against respondent. We see no necessity of discussing these various rulings. We have examined the record with care and are impressed that the trial court conducted the trial in a fair, impartial and competent manner.

As we understand the brief filed on behalf of appellant, we have dealt with the questions which have been sufficiently argued to require consideration.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.