**WARNER LAMBERT PHARMACEU-
TICAL COMPANY**

v.

**William H. SYLK.**

Civ. A. No. 42531.

United States District Court,
E. D. Pennsylvania.

Sept. 30, 1971.

Sun Ray, Inc., continued to operate the said chain of drug stores.

9. (a) Plaintiff sold merchandise to Sun Ray Drug Company on purchase orders issued by it prior to the merger and name changes as aforesaid and continued to do so until approximately May of 1962.

(b) At that time plaintiff concluded that the Sun Ray account was deemed by it to be insecure and seriously past due.

(c) In the month of May, 1962, plaintiff requested, and on or about May 25, 1962, received the guarantee admittedly executed by defendant, A true and correct copy of which is appended hereto as Exhibit "A-1".

11. In accordance with the aforesaid transactions, prior to May 11, 1965 plaintiff was owed the sum of $73,244.49 for goods sold and delivered.

12. On March 18, 1965, plaintiff made demand on defendant for payment under defendant's guaranty.

13. On May 11, 1965, the Honorable Francis L. VanDusen appointed Leon J. Obermayer as "Conservator", pursuant to a decree, a copy of which is hereto appended and marked Exhibit "A".

14. (a) Pursuant to the Order appointing the Conservator, he was obliged to notify creditors of Sun Ray Drug Company and Penrose Industries Corporation requiring them to file proofs of claim setting forth the nature and amount of their claims and whether they claimed secured lien or priority status.

(b) Under paragraph 12 of said decree all interested parties were enjoined from instituting or continuing suits or proceedings at law or in equity against the personal property which was the subject matter of a sales agreement between Sun Ray Drug Company and Marrud, Inc.

15. The notice sent to creditors is appended hereto as Exhibit "B".

Howard T. Glassman, Philadelphia, Pa., for plaintiff.

Michael H. Egnal, Philadelphia, Pa., for defendant.

## ADJUDICATION

DITTER, District Judge.

This case comes before the court on a suit by a creditor to require a guarantor to pay the debt of a bankrupt corporation. The parties have stipulated to the following facts:*

1. Plaintiff is a Delaware corporation.

2. Defendant, at all times pertinent hereto, was an officer, director and stockholder of Sun Ray Drug Company (a Pennsylvania corporation), which name shall refer to the corporation existing prior to the merger set forth in paragraph 3 below and the Sun Ray Drug Company (a Pennsylvania corporation) chartered in Pennsylvania on February 23, 1961, Consolidated Retail Stores, Inc. (a Delaware corporation), and Penrose Industries Corporation (a Delaware corporation).

8. Sun Ray Drug Company, as a wholly-owned subsidiary of Consolidated

---

* Editor's Note: Portions of the Adjudication, Decree and Exhibits were deleted by Judge Ditter from the copy prepared for the permanent law reports as not essential to an understanding of the case.

16. On or about June 10, 1965, plaintiff filed its proof of claim for each of its divisions in the form as indicated by Exhibit "C–1" appended hereto, with the Conservator.

17. On or about June 25, 1965, plaintiff advised defendant, by certified mail, that it had filed its proof of claim with the Conservator but that said filing was not a waiver of its rights against defendant. Defendant made no response to said letter. A copy of said letter and return receipt is appended hereto as Exhibit "D".

18. (a) Under date of January 14, 1966, a Creditors' Committee, which included counsel for the plaintiff, (who at that time did not represent the plaintiff herein), sent to creditors of Sun Ray Drug Company and/or Penrose Industries Corporation, a proposal for settlement with general unsecured creditors by the payment of 32½% of their claims in full settlement, a copy of which is hereto appended as Exhibit "E". The settlement was recommended by the Creditors' Committee and was to be payable as follows:

8½% in cash on July 13, 1966
8% on January 13, 1967
8% on July 13, 1967
8% on January 13, 1968

(b) A copy of the agreement with the Conservator and Penrose Industries and Sun Ray Drug Company providing for the foregoing proposal is hereto appended and marked Exhibit "F".

19. Defendant participated in the aforesaid settlement negotiations and along with his brother, Harry, agreed to guarantee any deficiency in funds needed for the settlement, over and above the payment to be received by the Conservator from Marrud, Inc.

20. A copy of the letter from the Conservator setting forth the above proposal is appended hereto as Exhibit "G".

21. Plaintiff filed its acceptance of said proposal with the Conservator. Plaintiff did not use the acceptance form submitted by the Creditors' Committee, a copy of which is appended hereto and marked Exhibit "H–1", but submitted its acceptance on a form in which plaintiff specifically reserved its rights against the defendant. A copy of said acceptance is hereto appended and marked Exhibit "H". Plaintiff received no objection to the form of acceptance filed by it but no specific approval thereof was received.

22. On September 2, 1966, plaintiff received a payment of $6,255.78 on account of the proposed settlement together with a letter of transmittal from the Conservator. The check in question contained a restrictive endorsement which was modified by the plaintiff prior to the deposit of the check. A true copy of said check, letter of transmittal and endorsement are appended hereto as Exhibits "I–a and I–b". The bracketed portion of the reverse side of the check denotes the modification made by the plaintiff. It was without any notice of any kind at the time to the Conservator or the defendant of said modification. Plaintiff received no objection to the aforesaid modification or any approval thereof.

23. The total percentage sum of 32½% was not paid.

24. On or before November 16, 1967, plaintiff received an additional check from the Conservator dated October 10, 1967, together with a letter of transmittal dated October 11, 1967. This check was in the sum of $5,859.56 and contained no restrictive endorsement. True and correct copies of the second check, its envelope and letter of transmittal are appended hereto as Exhibits "J–a and J–b".

25. (a) No further payments were tendered or received until July of 1970 when the sum of $5,859.56 was received from the Conservator. This sum was tendered by the Conservator in full and complete settlement against Penrose Industries, Sun Ray Drug Company, and Leon J. Obermayer, Conservator.

(b) This final payment was only accepted by the plaintiff after an agreement was reached between counsel for plaintiff and counsel for defendant setting forth the effect of the acceptance

of this sum. True and correct copies of the letter agreements between said counsel are appended hereto and marked Exhibits "K–a and K–b".

26. Ten Thousand Dollars ($10,000.-00) of the fund required to make the final payment in consummation of the settlement with the Conservator was contributed by the defendant and his brother, Harry Sylk.

## DISCUSSION

Defendant, William H. Sylk, was a director, major stockholder, and the president of Consolidated Sun Ray, Inc., now known as Penrose Industries Corporation. Finding its account with Penrose to be past due, plaintiff obtained from Sylk a personal promise to pay Penrose's debt. Thereafter, plaintiff made demand upon defendant for payment, but received nothing.

Penrose suffered financial difficulties and as a result of an action against it, a Conservator was appointed to protect the rights of all creditors. Having received instructions from the Conservator, plaintiff filed a proof of claim and at the same time notified Sylk that the filing of the claim did not relieve him from liability under his guarantee.

After negotiations with the Conservator, Penrose proposed to settle the claims of its creditors by the payment of $32\frac{1}{2}\%$ of its obligations in four instalments over an 18 month period. The defendant took part in the negotiations with the Conservator and executed the settlement agreement on behalf of Penrose and Sun Ray. In addition, he subordinated certain claims to the rights of creditors and with his brother, personally guaranteed the funds necessary to consummate the settlement.

The plaintiff agreed to the settlement proposed by Penrose but specifically noted a reservation of its rights against Sylk based upon his guarantee to it. Plaintiff then received a Conservator's check which contained a restrictive endorsement. Plaintiff deposited this check after changing the endorsement to add a reservation of its rights against Sylk. This suit was then started to require Sylk to pay the remaining balance due from Penrose. After suit was commenced, a subsequent payment was made by the Conservator, the check containing no restrictive endorsement.

More than three years after the second payment, a final payment was received by plaintiff in full and complete settlement of its claim against Penrose. This payment was not accepted, however, until counsel for Sylk agreed that it would in no way constitute a relinquishment of plaintiff's rights under the guarantee. The three payments to plaintiff totalled $17,974.90, approximately $5,600 less than the $32\frac{1}{2}\%$ called for in the agreement reached with Penrose.

The defendant's agreement with plaintiff imposed upon him the liability of a surety: the Act of July 24, 1913, P.L. 971, 8 P.S. § 1. Thus, he was primarily liable to the plaintiff and it was not required to institute legal proceedings against Penrose, or even make demand upon Penrose, to be entitled to payment of the debt. The defendant contends, however, that he has been discharged from liability by plaintiff's accepting the composition with creditors proposed by Penrose through the Conservator. Under the defendant's theory, the plaintiff agreed to release Penrose in return for the promise to pay $32\frac{1}{2}\%$ of the claim, and the legal effect of releasing Penrose, the principal debtor, was to release Sylk, the surety.

The ultimate decision in this case depends upon the following questions:

1. Did plaintiff enter into an agreement which released Penrose and thus discharged Sylk from his obligations as a surety?

2. When agreement was reached with Penrose and payment received from the Conservator, did the plaintiff's unilateral reservation of rights against Sylk prevent the discharge of his liability as surety?

3. Did Sylk's participation in negotiations with the Conservator amount to a consent to the terms under which plaintiff accepted the settlement proposed by Penrose?

I shall consider each of these questions in turn.

Plaintiff's agreement with Penrose is set forth in two documents, the agreement by and among Penrose, Sun Ray, and the Conservator dated January 3, 1966 (referred to as Exhibit "F" in paragraph 18 of the Stipulation of Facts) and plaintiff's acceptance of that agreement (Exhibit "H", paragraph 21).

■ The relevant part of the agreement among Penrose, Sun Ray, and the Conservator provides:

> "Such payments, made to the Conservator, will be distributed by him in full settlement to the creditors entitled thereto. *Upon payment of the 32½% settlement as provided hereunder, all claims of the general unsecured creditors shall be discharged.*" (Emphasis added)

Plaintiff's acceptance of this agreement states in part:

> ". . . the undersigned, . . . hereby agrees with the debtor [Sun Ray and Penrose], . . . to receive and accept from the debtor, in full satisfaction of his or its claim . . ., *32½% thereof payable in the manner set forth in the agreement* . . . dated January 3, 1966, *and subject to the conditions stated therein.*" (Emphasis added)

This language demonstrates clearly that actual *payment* of the 32½% was required in order to discharge claims such as plaintiff's, as contrasted with a discharge of such claims in exchange for a mere promise to pay 32½%.

This conclusion is further supported by the terms of the restrictive endorsement which was placed on the initial check mailed by the Conservator (Exhibit I–b, paragraph 22). It states in part:

> ". . . the payee agrees that endorsement of this check shall constitute full acceptance of the offer of settlement and *on condition that the additional payments still due under the settlement are made when due,* shall constitute a full discharge and satisfaction . . ." (Emphasis added).

■ An executed composition between a debtor and his creditors settles the claims and extinguishes the debts included within it, and the rights and remedies of the parties depend thereafter on the new agreement. On the other hand, an inchoate composition merely suspends the rights of action on the original claims while it remains in force, and a breach of the composition will revive them. If the discharge of a debtor is made conditional on payment, he may sue on the original cause of action if payment is not made: 15A C.J.S. Compositions with Creditors § 11d, pp. 140–141.

■ The cause of action for breach of an agreement between the debtor and his creditors varies according to the nature of the agreement. If that agreement does not contemplate the release of the debtor until full performance, a breach for default voids the composition and revives the original debt. The creditor may then sue for the remaining portion of the debt: 15A C.J.S. Compositions with Creditors § 10b, p. 135.

■ The terms of the agreement among Penrose, Sun Ray and the Conservator, plaintiff's acceptance of that agreement, and the endorsement on the Conservator's check to plaintiff all indicate that the payment of the full 32½% was a condition precedent to the discharge of Penrose. Since it is admitted that the full 32½% was not paid, neither Penrose nor the defendant was discharged.

■ Defendant contends, however, that subsequently Penrose was in fact discharged by plaintiff's acceptance of the final payment of 8% and that plaintiff therefore has no further claim against Penrose. This is true, but overlooks the agreement which preceded plaintiff's acceptance of this payment. Exhibits "K–a" and "K–b" make it clear that by receiving this payment, plaintiff did not relinquish any of its rights against the defendant and that the receipt of the money in question did not alter the legal position of the parties.

There is a second reason why defendant was not released by the composition

proposed by Penrose and accepted by the plaintiff. Plaintiff specifically reserved its rights against Sylk. Therefore, plaintiff's acceptance of Penrose's plan was conditional and did not have the legal effect of releasing Sylk, the surety.

■ It is hornbook law that the release of a principal debtor with a surety's consent does not discharge the surety. Indeed, even without such consent, if the creditor reserves its rights against a surety, the surety is not discharged: Standard Brands, Inc. v. Straile, 23 A.D. 2d 363, 260 N.Y.S.2d 913 (1965). See also 15A C.J.S. Compositions with Creditors § 11c, p. 140.

■ The creditor's release of the principal debtor with a reservation of rights against the surety, notifies the debtor that in spite of the release, the surety might be required to pay the debt and could be expected then to seek reimbursement from the principal. Therefore, the principal enters into an arrangement with his creditor fully aware of the fact that the liability still may be enforced against him through action of the surety: Restatement of Security, Section 122, Comment d. Of course the surety is not harmed by such arrangement since he can always protect himself by paying the debt when due and proceeding against the principal for immediate reimbursement.

■ The defendant contends that plaintiff's reservation of its rights on the first check was ineffective, citing cases which deal with the alteration of a release contained in an endorsement on a check. When such endorsements refer to an unliquidated amount or to a disputed debt, they may not be changed. The payee-claimant is either required to accept the check and accede to the condition under which it is offered, or else refuse to accept it and avail himself of his legal rights. The rationale of those cases is not applicable here. The check in question (see Exhibit "I(b)", paragraph 22) was forwarded by the Conservator, not the defendant-surety. Since neither Penrose nor the Conservator have made any objection to plaintiff's

reservation of its rights against the defendant, the cases cited by defendant are not in point.

There is a third reason why defendant cannot claim any benefit from the composition proposed by Penrose and accepted by the plaintiff.

In response to a notice from the Conservator, plaintiff filed its proof of claim against Penrose. At the same time, plaintiff notified defendant by certified mail that it was filing this claim but that it was not releasing him from the liability created by his personal guarantee. Thereafter, Sylk participated in the negotiations with the Conservator, executed the agreement of January 3, 1966, on behalf of Sun Ray and Penrose, subordinated individual claims to those of the creditors, and guaranteed funds to consummate the agreement. In view of his interest and his activities, I find he consented to the terms under which plaintiff accepted the arrangements which Penrose proposed: Philco Distributors, Inc. v. Edler, 288 F.Supp. 910 (N.D.Texas 1968). See also 72 C.J.S. Principal and Surety § 159, p. 645.

I find no merit in the contentions of the defendant. It follows that judgment must be entered in favor of the plaintiff in the full amount of its claim, less payments on account, plus interest.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties.

2. By agreement dated May 25, 1962, the defendant, William H. Sylk, became surety as to the existing and future indebtedness of various corporations (now known as Penrose Industries Corporation) to the plaintiff, Warner-Lambert Pharmaceutical Company.

3. Any release of claims against Penrose Industries Corporation based upon a composition of creditors by and among Penrose, Sun Ray Drug Company, and Leon J. Obermayer, Esquire, Conservator, dated January 3, 1966, was conditioned upon the payment of 32 and ½ per cent of the amount due to the creditors of Penrose, including plaintiff.

4. Payment under the agreement dated January 3, 1966, not having been made, the claims of general creditors, including that of plaintiff, were not released.

5. Plaintiff's reservation of its rights against the defendant, William H. Sylk, were legally effective and prevented the discharge of his liability as a surety for the debts of Penrose.

6. The participation of the defendant, William H. Sylk, in negotiations with the creditors of Penrose, his agreements in connection therewith, and his execution of the composition dated January 3, 1966, amounted to an assent to the terms under which plaintiff accepted the proposals of Penrose for the settlement of claims against it.

7. The acceptance by plaintiff of the final payment of eight per cent from Leon J. Obermayer, Esquire, Conservator, in July, 1970, is irrelevant to the present litigation, except with regard to the mitigation of damages.

8. The defendant, William H. Sylk, has not been discharged as a surety for the debts of Penrose Industries Corporation to plaintiff, Warner-Lambert Pharmaceutical Company, and to the contrary, he remains liable thereon.

9. The defendant, William H. Sylk, is liable to the plaintiff, Warner-Lambert Pharmaceutical Company, in the sum of $72,613.26, less payments on account by Leon J. Obermayer, Esquire, Conservator, of $17,974.90, plus interest to September 30, 1971, $26,056.00, or a total of $80,694.36.

# APPENDIX

## EXHIBIT A–1

Warner-Lambert Pharmaceutical Company
201 Tabor Road
Morris Plains, New Jersey

Gentlemen:

In consideration of the extension of credit to Consolidated Sun Ray, Inc., its Sun Ray Division, and/or any of its other Divisions and Subsidiaries, hereinafter called the debtor, I, William H. Sylk hereby guarantee the payment of any indebtedness of said debtor to Warner-Lambert Pharmaceutical Company and any of its Divisions and Subsidiaries, hereinafter referred to as the creditor, whether such indebtedness now exists or is incurred hereafter, and in whatever form it may be evidenced.

I hereby waive notice of the goods and merchandise sold to said debtor. Any agreement between debtor and creditor, expressed or implied, to extend the time of payment, shall not invalidate the guaranty, whether or not the guarantor is notified of any such extension or of any delinquency in payment.

This guaranty shall not be revoked by the death of the guarantor, but shall remain in force until the undersigned or the executor or administrator of the undersigned shall have given notice in writing by registered mail to extend no further credit to said debtor on the security of this guaranty.

In witness hereof, I have hereunto set my hand and seal at Philadelphia, State of Pennsylvania, this 25th day of May, 1962.

(s) ――――――――――
(William Sylk)

## EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MODART, INC. and
PARK & TILFORD,
(a corporation)
  On behalf of themselves and
  all other creditors, secured
  and unsecured, of Penrose
  Industries Corporation
  (a Delaware corporation) et al.
          Plaintiffs

      vs.

PENROSE INDUSTRIES CORPORATION,
(a Delaware corporation),
SUN RAY DRUG CO.,
(a Pennsylvania corporation),
MARRUD INCORPORATED,
(a Massachusetts corporation),
NEW SUN RAY DRUG CO. INC.,
(a Pennsylvania corporation),
        Defendants

CIVIL ACTION

No. 37995

### DECREE

AND NOW, to wit, this 11th day of May, 1965, it is

ORDERED, ADJUDGED and DECREED that,

1. The Plaintiffs are entitled to relief.

2. Leon J. Obermayer is hereby appointed Conservator pursuant to Rule 66 of the Rules of Federal Procedure to investigate all aspects of the said sale and determine whether the sale made by Sun Ray to Marrud, Incorporated, under the Sale Agreement is in the best interest of creditors, and to take appropriate action in the interest of creditors before this Court consistent with the findings and conclusions in respect thereto. The said Conservator shall have the rights, powers and duties similar to those of a Receiver with respect to the foregoing matters, in accordance with the aforesaid Federal Rule of Civil Procedure No. 66. For the purpose aforesaid the Conservator shall, by himself or by an accountant appointed by this Court, have access to the books and records of Penrose and Sun Ray relating to the said sale, and take any other appropriate action required for such full investigation of such sale.

4. The Conservator shall forthwith be entitled to and shall take into his possession all funds payable for any reason whatsoever by Marrud, Incorporated, to Sun Ray under the provisions of the Sale Agreement, and shall also be entitled to and shall receive any and all Marrud, Incorporated, stock to be issued and delivered by the latter as part of the consideration under the provisions of the said Sale Agreement, during the entire five year period that that provision is in effect.

5. The Conservator shall have the right and power to investigate and determine the validity of all liens asserted against the assets of Penrose or Sun Ray which are included in the Sale Agreement, and, if valid, the correct amount due thereon, and he shall investigate and determine the validity, order of payment, and amount due, of all priority claims. He shall also have the right and power to determine the validity and correct amount due all general creditors of Penrose and Sun Ray, and to contest the payment in whole or in part of any claim or claims that he deems improper or not entitled to participate in the proceeds of the sale under the Sale Agreement.

6. Penrose and/or Sun Ray shall prepare a list of all creditors who assert a claim of any nature against the proceeds of the Sale Agreement within fifteen days from the date hereof, and shall file same in Court and deliver a copy thereof to the Conservator. The said list shall classify creditors as to admitted, or disputed, secured, lien, and general claims, and shall set forth the address of each creditor and the amount of his alleged claim. The said list as to secured claims shall set forth the nature and value of the security that he holds; as to the lien creditors it shall set forth the nature of the lien and the date thereof.

7. The Conservator shall, within ten days after the aforesaid list of creditors is filed, send notice to all creditors of Penrose and Sun Ray advising them of his appointment, the purpose of his appointment, and notifying them that they are required to file proofs of claim setting forth the nature and amount of their claims, and whether they claim secured, lien, or priority status. He shall also give such notice to all creditors of Penrose and Sun Ray by advertising in one daily newspaper and in the Legal Intelligencer once a week for three successive weeks.

10. Penrose and Sun Ray, and their agents and representatives, are directed to forthwith pay over to the Conservator any and all funds in its and their possession, derived from any source whatsoever under the aforesaid Sale Agreement, and to direct Marrud, Incorporated, to pay to the Conservator any and all funds payable to Sun Ray under the terms of the Sale Agreement, to deliver the Note for the amount due under the said Agreement to the Conservator, and to deliver to the Conservator any and all stock of Marrud, Incorporated, when and if such stock is to be delivered under the provisions of the said Agreement.

11. The Conservator shall have the right and power upon completion of his investigation, unless otherwise ordered by the Court, to distribute the funds that come into his possession to creditors who file proofs of claim that are not contested, on a periodic pro-rata basis, reserving, however, from such fund such amount as may be necessary for the payment to creditors who have failed to file proofs of claim, or whose claims are contested, until such claims are settled or adjudicated, and for administrative expenses.

12. That all persons, firms and corporations, creditors, marshalls, sheriffs and constables, are hereby enjoined from instituting, commencing, prosecuting or continuing the prosecution of any actions, suits or proceedings, at law or in equity, or under any statute, against the personal property which is the subject matter of the Sale Agreement, or the proceeds of such sale, either in the possession of any of

the Defendants, or in the possession of the Conservator, and from enforcing any lien or claim upon the said property, and from levying, serving, or continuing any proceedings on any garnishments, attachments, or executions, or other process upon or against the said property or the proceeds of the sale thereof, and from doing any act in any way interfering with the said property, or the proceeds thereof.

/s/  FRANCIS L. VAN DUSEN
J.

## EXHIBIT B

Re:  SUN RAY DRUG CO. and/or          U. S. DIST. COURT
     PENROSE INDUSTRIES CORP.   EASTERN DIST. OF
     8000 Penrose Avenue              PENNA.
     Philadelphia, Pa.                    Civil Action No. 37995

To the Creditors of SUN RAY DRUG CO., and/or
     PENROSE INDUSTRIES CORPORATION

Gentlemen:

On May 11th, 1965, the United States District Court for the Eastern District of Pennsylvania appointed Leon J. Obermayer, Esquire, of Philadelphia, Conservator for the purpose of investigating all aspects of the sale in bulk by Sun Ray Drug Co. to Marrud, Inc., of its drug store and warehouse assets, and, if such sale is found to be in the best interest of creditors, to supervise the proper distribution of the proceeds of such sale to those legally entitled thereto.  The undersigned were duly appointed counsel for the Conservator.

You are requested to promptly file your Proof of Claim, verified before a Notary Public, setting forth the nature and amount of your claim, and whether you are claiming secured, lien, or priority status. It should be filed with the Conservator at his office, 1418 Packard Building, Philadelphia, Pa. 19102.

You are advised that the Decree entered by the Court provides as follows: [See para. 12, Ex. A]

The Conservator and his counsel are in the process of carrying out the functions vested in them by the Decree as diligently and aggressively as possible.

Very truly yours,

GOFF and RUBIN
Six Penn Center Plaza
Philadelphia, Pa.,   19103

SKLAR and PEARL,
1701 Delancey Place
Philadelphia, Pa.,   19103
Attorneys for Conservator

## EXHIBIT C

June 10, 1965

Leon J. Obermayer, Esquire
1418 Packard Building
Philadelphia, Pennsylvania 19102

Re: Sun Ray Drug Co. and/or Penrose Industries Corporation

Dear Sir:

As requested we are enclosing proof of claim for the following Divisions of Warner Lambert Pharmaceutical Company:

| | |
|---|---|
| Warner Lambert Products Division | $66,412.60 |
| American Chicle Company Division | 3,909.75 |
| Lactona Products Division | 549.09 |
| Richard Hudnut | 1,894.02 |
| Standard Laboratories | 253.73 |
| DuBarry | 225.30 |

Very truly yours,

WARNER LAMBERT
PHARMACEUTICAL CO.

H. Rasmussen
Assistant Credit Manager

## EXHIBIT C–1

STATE of <u>New Jersey</u>
Borough of <u>Morris Plains</u>  } ss.
County of <u>Morris</u>

Aleck M. MacKinnon, 10 Wilcox Drive, Mountain Lakes, New Jersey *being duly sworn, doth depose and say, that he is* Treasurer of American Chicle Company Division of Warner Lambert Pharmaceutical Company

*that the annexed statement of the account of* Sun Ray Drug Company and/or Penrose Industries Corporation *lately doing business at* 8000 Penrose Avenue, Philadelphia *in the State of* Pennsylvania *is just, true and correct, that there is now due the sum of* three thousand, nine hundred nine and 75/100 *Dollars, that no part thereof has been paid or satisfied, and that there are no set offs, or counterclaims thereto to the knowledge or belief of deponent.*

(s) <u>Aleck M. MacKinnon</u>

*Sworn to before me, this* 11th }
*day of* June, *1965*

(s) Kathleen K. Dickieson

**KATHLEEN K. DICKIESON**
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES
MAY 9th, 1968

EXHIBIT D

June 25, 1965

Mr. William H. Sylk
400 Bryn Mawr Avenue
Bryn Mawr, Pennsylvania

Dear Mr. Sylk:

As ordered by the United States District Court we have filed our claim against Sun Ray Drug Company, and/or Penrose Industries Incorporated with the Court appointed Conservator, Leon J. Obermayer.

The filing of our claim does not, of course, relieve you of any liability under your personal written guarantee dated May 25, 1962.

Very truly yours,

WARNER LAMBERT
PHARMACEUTICAL CO.

H. E. Tyler
General Credit Manager

HET/ab

EXHIBIT E

# Credit Management Association
## of Delaware Valley

AFFILIATED WITH THE NATIONAL ASSOCIATION OF CREDIT MANAGEMENT

BAILEY BUILDING, 1218 CHESTNUT STREET

PHILADELPHIA 7, PA.                    WAlnut 3–4363

## COLLECTION DEPARTMENT

January 14, 1966

To the Creditors of
SUN RAY DRUG CO. and/or
PENROSE INDUSTRIES CORP.
8000 Penrose Avenue
Philadelphia, Penna.

Gentlemen:

As heretofore advised, the undersigned Creditors' Committee, permitted by the Court to intervene in these proceedings on behalf of general unsecured creditors, has been conferring and cooperating with the Conservator and his Counsel. At a meeting of the Creditors' Committee held January 10, 1966 in this office, an offer of $32\frac{1}{2}\%$ in full settlement was submitted and your Committee voted unanimously to recommend its acceptance to creditors.

Sun Ray and/or Penrose will pay to general unsecured creditors $32\frac{1}{2}\%$ of their respective claims in full settlement, as follows:

$8\frac{1}{2}\%$ on July 13, 1966
$8\%$   on January 13, 1967
$8\%$   on July 13, 1967
$8\%$   on January 13, 1968

In addition, Sun Ray and/or Penrose will pay all costs of administration and all lien and priority claims.

As heretofore advised, the sale to Marrud, Inc. has been approved by the Court, $200,000. has been paid to the Conservator, and Marrud, Inc. will pay $1,450,000. over the next two years. These payments by Marrud, Inc. will be made to the Conservator, and will be used by him toward the payments to Sun Ray and/or Penrose's general unsecured creditors under the terms of the settlement. The balance necessary to complete the settlement, that is, the amount in excess of that provided by the Marrud notes, will be *guaranteed by William H. and Harry S. Sylk individually,* and *by William Penn Broadcasting Company.* This latter guarantee will be subordinated to certain specified lienholders.

The Conservator and his Counsel recommended acceptance of this offer, and have, or are about to so advise creditors by letter. At the meeting of the Creditors' Committee, the Conservator pointed out that the claims of general unsecured creditors approximate $4,000,000.; that the claims of landlords are estimated at approximately $1,500,000.; and that 32½% of this total is in excess of $1,750,000. In addition, Sun Ray and/or Penrose is responsible for the payment or discharge of all priority and lien claims, estimated at $1,000,000. and who, being creditors of Penrose, have liens against subsidiary corporations. The Conservator and his Counsel believe that general unsecured creditors will receive the maximum possible benefit by accepting this offer of settlement.

The undersigned Creditors' Committee recommends acceptance of the offer. Submitted herewith is a form of Consent which you are urged to sign. Please indicate thereon the amount of your claim and return it at once with a statement of account to the Secretary of the Creditors' Committee.

Very truly yours,

CREDITORS' COMMITTEE
DAVID ROSEN, Chairman

## EXHIBIT F

THIS AGREEMENT made and executed in the City of Philadelphia, State of Pennsylvania, this third day of January, 1966, by and among PENROSE INDUSTRIES CORPORATION, a Delaware corporation (hereinafter called "PENROSE"), SUN RAY DRUG COMPANY, a Pennsylvania corporation (hereinafter called "SUN RAY"), and LEON J. OBERMAYER, Esquire, in his capacity as Conservator (appointed by decree of the United States District Court for the Eastern District of Pennsylvania on May 11, 1965), (hereinafter called "CONSERVATOR"), all parties hereto intending to be legally bound hereby.

WITNESSETH:

1. *Payment to be made.*

PENROSE hereby agrees to pay to its general unsecured creditors (as defined in Paragraph 4 hereof) in full settlement of their respective claims, 32½% of the amount of each claim without interest. Such payments in full settlement shall be made by PENROSE to CONSERVATOR, as follows:

8½% in cash on July 13, 1966;
8% on January 13, 1967;
8% on July 13, 1967; and
8% on January 13, 1968.

Such payments, made to the CONSERVATOR, will be distributed by him in full settlement to creditors entitled thereto. Upon payment of the 32½% settlement as provided hereunder, all claims of general unsecured creditors shall be discharged. Evidence of the deferred obligations, and provisions for security therefor, are described in paragraph 7 hereof.

3. *Acceptances.*

A. . . .

B. PENROSE, through its officers and agents, shall solicit acceptances, waivers, and other agreements which shall adjust the claims of any creditor claiming under the terms of a lease in or for which PENROSE or SUN RAY are either primarily or secondarily liable. As each such arrangement is made, PENROSE agrees to deliver to the CONSERVATOR written evidence of such arrangement and, thereafter, to deposit sufficient funds to effectuate the settlement, as part of the cash requirements under paragraph 2 above. Such arrangements shall be completed within ninety (90) days from the date hereof.

C. In the event that PENROSE cannot make an arrangement with all such landlord creditors, it shall have the right to file a Petition for an Arrangement under Chapter XI of the Federal Bankruptcy Act but, in such event, the $50,000.00 deposit shall not be returned to PENROSE but shall be retained by the CONSERVATOR and be disposed of pursuant to the order of the United States District Court.

4. *Definition of Unsecured Creditors.*

For the purposes of this Agreement, general unsecured creditors shall be deemed to include all creditors of PENROSE or SUN RAY, except any obligations due to (a) William H. Sylk.

7. *Deferred Payments.*

A. Notes: To evidence the payments provided for in Paragraph 1 hereof, PENROSE and SUN RAY shall, within ten (10) days after

notice of the acceptance by 80% of the claims or upon PENROSE'S exercising the option to proceed with the settlement contemplated hereby, despite acceptances by less than 80%, execute and deliver to the CONSERVATOR an installment judgment note made payable to the CONSERVATOR (which note shall not bear interest except in the event of a default) for the amounts due hereunder to general unsecured creditors, in the installments hereinbefore provided for.

Such note shall not be entered of record except in the event of a default, and shall provide for acceleration of the entire balance in the event of a default in the payment of any installment provided for therein, or a default in the performance of any of the terms of this Agreement. No action, including entry of judgment or acceleration shall be taken against PENROSE unless a default persists for a period of thirty (30) days. However, if the default is due to the failure of Marrud, Inc. to pay its note or notes when due, the payment due on the note of PENROSE hereunder shall not be accelerated and no action shall be taken against PENROSE within six (6) months from the date of each such default. The note shall also provide for the privilege of prepayment.

B. *Security*: As collateral security for the payment of the amount payable under said note in excess of $1,450,000.00 (being the amount payable by Marrud, Inc. under the notes to be given by it pursuant to the "Modification of Contract" dated November 22nd, 1965), PENROSE agrees to procure and deliver to the CONSERVATOR, at the time of delivery of such note, the following:

(a) the guarantee, as so limited, of William H. Sylk and Harry S. Sylk;

(b) the guarantee, as so limited, of the William Penn Broadcasting Co., duly authorized and approved by appropriate resolutions of its Board of Directors and shareholder. Said guarantee shall be subordinated to the claims of Kirkeby-Natus, Sherwood Gordon, Gabriel Powers, and the claims, not to exceed $1,000,000.00, of persons or other entities to whom security is given by PENROSE or William Penn Broadcasting Co. in order to obtain funds for the payment of lien and/or priority creditors or to otherwise secure their releases; and

(c) an agreement subordinating the claims of William H. Sylk and Harry S. Sylk, in the amount of $1,980,000.00 and the debentures issued by William Penn Broadcasting Co. to William H. Sylk and Harry S. Sylk, to the rights or claims of the CONSERVATOR, on behalf of creditors, under the guarantee provided for in Subsection (b) hereof, and as limited therein.

It is agreed that the assets of William Penn Broadcasting Co. shall not be sold or further encumbered, other than as above provided, without the consent of CONSERVATOR on behalf of all creditors, but such consent shall not be withheld as long as adequate provision, limited as above, is made by PENROSE for the protection of the creditors' security.

8. *Disputed Claims.*

A. . . .

B. *Unsecured Claims*: If PENROSE desires to dispute any unsecured claim, it may do so, but PENROSE shall, at the time of making the initial 8½% cash payment hereunder, deposit with the CON-

SERVATOR sufficient funds to cover 8½% of the amount claimed, and the balance shall be included in the note representing the deferred payments hereunder.  Such cash and note shall be held by the Conservator until the proper amount of such claim is determined.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year herein first above written.

PENROSE INDUSTRIES CORPORATION

By: _____
    Harry S. Sylk, Chairman of the Board

By: _____
    William H. Sylk, President

Attest: _____
    Sidney Goldstein, Secretary

SUN RAY DRUG COMPANY

By: _____
    Harry S. Sylk, Chairman of the Board

By: _____
    William H. Sylk, President

Attest: _____
    Sidney Goldstein, Secretary

_____(SEAL)
    Leon J. Obermayer, Conservator

We, the undersigned, have read, and hereby approve and agree to be bound by, the provisions of the foregoing Agreement.

PENROSE CREDITORS' COMMITTEE

By: _____
    David Rosen, Chairman

Attest: _____
    George Ashe, Secretary

We, the undersigned, have read, and hereby approve the foregoing Agreement and, intending to be legally bound hereby, we agree to execute the documents required by the provisions of Subsection B of paragraph 7 of the foregoing contract.

_____(SEAL)
    William H. Sylk

_____(SEAL)
    Harry S. Sylk

The William Penn Broadcasting Co. has read the foregoing Agreement, and hereby agrees to execute the guarantee required by paragraph 7, B, (b) of the foregoing contract.

WILLIAM PENN BROADCASTING CO.

By: _____
    William H. Sylk, President

Attest: _____
    Sidney Goldstein, Secretary

EXHIBIT G

Re: SUN RAY DRUG CO. and/or PENROSE INDUSTRIES CORP., 8000 Penrose Avenue, Philadelphia, Pa.

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA

Civil Action No. 37,995

To the Creditors of SUN RAY DRUG CO. and/or
PENROSE INDUSTRIES CORP.

Gentlemen:

We previously reported to you that the Conservator had requested the United States District Court for the Eastern District of Pennsylvania to approve his Petition and Report with respect to the sale to Marrud, Inc., of certain drugstore assets of the Sun Ray Drug Division of Penrose Industries Corporation. On December 20, 1965, the Court entered an Order approving the Conservator's Petition and the aforesaid sale. Settlement pursuant to this sale was held on January 3, 1966. As was also reported, the Conservator has received $200,000.00 in cash and is to receive an additional $1,450,000.00 payable over the next two years.

It was also reported to you that any possible dividend to be paid to creditors from these proceeds would necessarily be small, and that the Conservator and his counsel, along with counsel for the Creditors' Committee had been negotiating with the officers of Penrose Industries Corporation for a general over-all settlement with creditors. Negotiations for this purpose have been going on for several months.

You may recall that in August, 1965, at a meeting of the Creditors' Committee, the defendant corporation made an offer to pay 15% to general unsecured creditors; 5% cash, 5% in one year, and 5% in two years. Despite a feeling on the part of some members of the Committee that such an offer should be given serious consideration, the Conservator and his counsel urged rejection of this offer until a complete examination could be made of all of the assets of Penrose. The Creditors' Committee then agreed that no offer should be considered unless and until the Conservator and his counsel and his auditors had completed an examination in depth. The Conservator and his counsel examined the officers of the defendant corporation over a period of many weeks and also utilized the examinations made by the auditors of the Conservator. The defendants during this period have from time to time met with the Conservator and his counsel and counsel for the Creditors' Committee to discuss an increased offer to creditors. The Conservator took the position that no settlement was possible unless the defendants evaluated fairly all of the real and potential assets of Penrose.

An exhaustive analysis was made of all possible assets of the parent corporation, including the proceeds from the sale of the drugstores to Marrud, Inc., possible returns from notes and accounts receivable (pledged as security to a bank), the value of the stock of Wm. Penn Broadcasting Company, owner and operator of radio station WPEN, including a possible attack on certain liens and debentures asserted

by certain individuals, the value of the stock of Consolidated International Trading Corporation, a wholly owned subsidiary which has future potential value but little present realizable value for creditors, and all other possible sources of income or return.

After many weeks of negotiation, the Conservator and his counsel, along with counsel for the Creditors' Committee, were successful in obtaining an offer which, in their opinion, was worthy of recommendation to creditors. Many interim offers have been rejected, so that this represents the best offer available after exhausting every avenue. The vast number of creditors made it essential to get the highest possible offer before submitting it to creditors.

Penrose and Sun Ray have now entered into an Agreement with the Conservator, acting for creditors, which provides essentially as follows:

1. Penrose will pay to general unsecured creditors 32½% of their respective claims in full settlement.

2. In addition, Penrose will pay all costs of administration and satisfy all lien and priority claims by payment or procurement of releases.

3. Payment of the 32½% will be made as follows:

8½% on July 13, 1966
8% on January 13, 1967
8% on July 13, 1967
8% on January 13, 1968

5. The balance necessary to complete the settlement (that is, the amount in excess of that provided by the Marrud notes) will be guaranteed by William H. and Harry S. Sylk individually, and by Wm. Penn Broadcasting Company. (This latter guarantee will be subordinated to certain specified lienholders).

You should shortly receive from the Creditors' Committee a letter which will include an Acceptance to be signed by you. There are about $4,000,000.00 in general unsecured creditors' claims.

The Conservator and his counsel believe this to be an excellent settlement and recommend without hesitation that you execute the Acceptance form and promptly return it as directed.

Very truly yours,

LEON J. OBERMAYER,
Conservator.

GOFF & RUBIN, ESQS.,
Six Penn Center Plaza,
Philadelphia, Pa. 19103.

SKLAR & PEARL, ESQS.,
1701 Delancey Place,
Philadelphia, Pa. 19103.

Attorneys for Conservator

## EXHIBIT H

### A C C E P T A N C E

KNOW ALL MEN BY THESE PRESENTS:

THAT the undersigned, a creditor of Penrose Industries Corporation, a Delaware corporation (formerly Consolidated Sun Ray, Inc.) and/or Sun Ray Drug Co., a Pennsylvania corporation (hereinafter collectively called the "Debtor"), hereby agrees with the Debtor, as well as with other creditors, to receive and accept from the Debtor, in full satisfaction of his or its claim against Debtor but subject to the reservation of all rights against any endorser, guarantor, or surety, as stated below, thirty-two and one-half (32½%) per cent thereof payable in the manner set forth in the agreement between Penrose Industries Corporation, Sun Ray Drug Company and Leon J. Obermayer dated January 3, 1966 and subject to the conditions stated therein.

The undersigned further agrees that, in the event a petition is filed by the Debtor under Chapter XI of the Act of Congress relating to bankruptcy and a plan is submitted containing the same provisions as those outlined in the aforesaid agreement of January 3, 1966, this acceptance shall be an acceptance of said plan in that proceeding.

It is agreed that separate acceptances signed by the creditors of the Debtor shall be treated and considered with the same force and effect as if all accepting creditors had executed one and the same instrument.

The foregoing shall in no way be construed or be deemed to discharge the rights or remedies that the undersigned now has or may hereafter have against any endorser, guarantor or surety who now is or may hereafter be liable to the undersigned by virtue of the aforesaid debt of Penrose Industries Corporation, (formerly Consolidated Sun Ray, Inc.) and/or Sun Ray Drug Company, to the undersigned, and each and every such right and remedy is hereby expressly reserved by the undersigned, including but not limited to any such rights held by WARNER-LAMBERT PHARMACEUTICAL COMPANY with respect to William H. Sylk.

IN WITNESS WHEREOF, the hand and seal of the undersigned has been hereunto affixed this second day of March, 1966.

WARNER-LAMBERT
PHARMACEUTICAL COMPANY

A. M. MacKinnon,
Treasurer

$73,244.49
Amount of Claim

STATEMENTS OF ACCOUNT ATTACHED

## EXHIBIT H–1

### A C C E P T A N C E

KNOW ALL MEN BY THESE PRESENTS:

THAT the undersigned, a creditor of Penrose Industries Corporation, a Delaware corporation (formerly Consolidated Sun Ray, Inc.) and/or Sun Ray Drug Co., a Pennsylvania corporation (hereinafter collectively called the "Debtor"), hereby agrees with the Debtor, as

well as with other creditors, to receive and accept from the Debtor, in full satisfaction of his or its claim, as stated below, thirty-two and one-half (32½%) percent thereof payable in the manner set forth in the agreement between Penrose Industries Corporation, Sun Ray Drug Company and Leon J. Obermayer dated January 3, 1966 and subject to the conditions stated therein.

The undersigned further agrees that, in the event a petition is filed by the Debtor under Chapter XI of the Act of Congress relating to bankruptcy and a plan is submitted containing the same provisions as those outlined in the aforesaid agreement of January 3, 1966, this acceptance shall be an acceptance of said plan in that proceeding.

It is agreed that separate acceptances signed by the creditors of the Debtor shall be treated and considered with the same force and effect as if all accepting creditors had executed one and the same instrument.

IN WITNESS WHEREOF, the hand and seal of the undersigned has been hereunto affixed this        day of        , 1966.

_____
Name of Creditor

_____
Signature of Person Signing

_____
Amount of Claim

KINDLY ATTACH STATEMENT OF ACCOUNT AND
RETURN THIS ACCEPTANCE FORM PROPERLY
EXECUTED TO

George Ashe, Secretary, Creditors' Committee
Rm. 904 — 1218 Chestnut St., Phila., Pa.   19107

1/12/66

EXHIBIT Ia

**LEON J. OBERMAYER**
CONSERVATOR OF PENROSE INDUSTRIES
CORPORATION AND SUN RAY DRUG CO.
1418 PACKARD BUILDING
PHILADELPHIA, PA.   19102        August 29,   19 66   No. 1 0 4 0

Pay   Six thousand two hundred twenty-five and 78/00-------**Dollars**   $ 6,225.78

TO THE
ORDER
OF

Warner-Lambert Pharmaceutical Company
Morris Plains, New Jersey
Attention: Mr. Rasmucin

(s)   Leon J. Obermayer

THE BRYN MAWR TRUST COMPANY
BRYN MAWR, PA.

|:0 3 1 3'''0 8 4 8|:     2 7 5'''8 8 0'''4'□

## EXHIBIT Ib

"In consideration of the amount of this check paid pursuant to the offer of settlement made by Penrose Industries Corporation and/or Sun Ray Drug Co. and the acceptance of the settlement by other creditors, the Payee agrees that endorsement of this chack shall constitute full acceptance of the offer of settlement and on condition that the additional payments still due under the settlement are made when due shall constitute a full and complete discharge and satisfaction of Penrose Industries Corporation and/or Sun Ray Drug Co. by the payee." EXCEPT as to any rights or remedies the payee may now or hereafter have against any endorser, guarantor or surety who now is or may as amended before hereafter be liable to said payee by virtue of the debt    deposit of Penrose Industries, Corporation and/or Sun Ray Drug    9/2/66 Company of which this payment constitutes a partial settlement.

## EXHIBIT J(b)

---

### LEON J. OBERMAYER      1943

CONSERVATOR OF PENROSE INDUSTRIES
CORPORATION AND SUN RAY DRUG CO.
1418 PACKARD BUILDING
PHILADELPHIA, PA.    19102      October 10 19 67

**Pay**    Five thousand eight hundred fifty-nine and 56/00----------**Dollars**    $ 5,859.56

TO THE
ORDER
OF

     Warner-Lambert
     Attn: Mr. Rasmucin
     Morris Plains, N.J.

                                                    (s)    Leon J. Obermayer

THE BRYN MAWR TRUST COMPANY
     BRYN MAWR, PA.

            I:0 3 1 3'''0 8 4 8I:      2 7 5'''8 8 0'''4'☐

---

No restrictive endorsement required or indicated on reverse side of check

## EXHIBIT K–A

### Law Offices

### WEXLER, WEISMAN, MAURER & FORMAN

MORRIS M. WEXLER
MORRIS WEISMAN
M. E. MAURER
LEON S. FORMAN
HORACE A. STERN
ROBERT I. MORRIS
RAYMOND L. SHAPIRO
CHARLES M. WEISMAN
HOWARD T. GLASSMAN

One East Penn Square

Juniper & Market Streets

**Philadelphia, Pa. 19107**

CABLE ADDRESS
"WEXWEIS"

June 18, 1970

Telephone
LOcust 8–1900

———

JOHN E. MULDER
1952–1966.

670042

Egnal, Simons & Egnal
600 Bankers Securities Bldg.
1315 Walnut Street
Philadelphia, Pa.   19107

ATT: Michael H. Egnal, Esquire

RE: Warner-Lambert Pharmaceutical Company
vs. William H. Sylk

Dear Mike:

This will set forth our understanding with regard to our client's acceptance of the Conservator's proposal to pay an additional 8% in full and complete settlement of all claims against Penrose Industries Corporation, Sun Ray Drug Company and/or Leon J. Obermayer as Conservator of Penrose Industries Corporation.

I advised you that my client has no objection to accepting the payment of 8% in full and complete settlement against the aforementioned parties, but this in no way constitutes a relinquishment of its rights against William H. Sylk on the guarantee given to it.

You advised me that it was your position that our client's rights were determined when it accepted the first payment made by the Conservator and that you will agree on behalf of your client that acceptance of the instant payment will in no way alter our client's position.

If it is determined that our client had the right to accept the first payment made by the Conservator without discharging Mr. Sylk from the liability created by his personal guarantee, then acceptance of the final payment will likewise not prejudice our client's rights against Mr. Sylk.

If the foregoing correctly sets forth our understanding, please sign the enclosed copy of this letter and return it to me so that I may make the necessary arrangements for acceptance of the offer made by the Conservator.

Kindest personal regards.

Sincerely yours,

HOWARD T. GLASSMAN

for WEXLER, WEISMAN, MAURER & FORMAN

MICHAEL H. EGNAL       DATE:

1062

LAW OFFICES

# EGNAL AND EGNAL

1315 WALNUT STREET
SUITE 600 BANKERS SECURITIES BLDG.
PHILADELPHIA, PA. 19107

215 PEnnypacker 5–2929

June 25, 1970.

Howard T. Glassman, Esquire,
Wexler, Weisman, Maurer & Forman,
One East Penn Square,
Juniper & Market Streets,
Phila., Penna. 19107.

Re: Warner-Lambert Pharmaceutical
Company v. William H. Sylk

Dear Howard:

Your letter of June 18, 1970, setting forth the effect of your client's acceptance of the additional 8% in full and complete settlement of all claims against Penrose Industries Corporation, Sun Ray Drug Company and/or Leon J. Obermayer as Conservator of Penrose Industries, is satisfactory.

You may be good enough to send the consent to the Conservator with a copy of your covering letter to me.

With kindest regards, I am,

Sincerely,

(s) Michael H. Egnal