Hart, J.
 

 The question for decision is whether Gholson’s release of Garber, under the circumstances of this case, operated to discharge Savin as well.
 

 The express contract of a lessee fixes his liability to the lessor for the payment of rent for the whole term; but in case of assignment of the lease by the lessee the liability of the assignee to the lessor is limited to the rent accruing during the continuance of the assignee’s interest; and the lessor may, at his election, sue either the lessee or the assignee, or both, for the nonpayment of rental accruing after assignment, but is entitled to but one satisfaction.
 
 Sutliff
 
 v.
 
 Atwood,
 
 15 Ohio St., 186, 194;
 
 Taylor
 
 v.
 
 DeBus,
 
 31 Ohio St., 468, 470, 471;
 
 Smith
 
 v.
 
 Harrison,
 
 42 Ohio St., 180, 185; 36 Corpus Juris, 373, Section 1227; 16 Ruling Case Law, 851, Section 352.
 

 In this case, Gholson elected to sue both Garber and Savin separately, securing a judgment against each
 
 *555
 
 for a similar amount. These hare judgments were but security for the original cause of action
 
 (Wright
 
 v.
 
 Lathrop,
 
 2 Ohio, 33, 52, 15 Am. Dec., 529, 531), and while Gholson could not collect both, he was entitled to collect from one or the other, or from both of his debtors together, the full amount of the debt, unless he released Savin by discharging Garber through his settlement with the latter.
 

 At common law, when a creditor of codebtors, jointly indebted in the same manner or in the same relationship, makes settlement with one of them, he thereby releases the other joint debtors from the obligation. The reason for this rule is that such a settlement destroys the equitable right of contribution between such joint debtors.
 

 However, by reason of Sections 8079, 8081, 8082 and 8084, General Code, a settlement by a creditor 'with one of his joint debtors does not now release the other joint debtors from the obligation. It will be noted that the statutes protect such other codebtors from being required to pay any part of the proportionate share of the codebtor who has settled with his creditor. In other words, if a creditor settles with one joint debtor, even though such settlement should be for less than the latter’s proportionate share of the obligation, his full share of such obligation is credited as a payment on the common debt so far as his codebtors are concerned, and the loss incident to such settlement, if any, falls upon the creditor and not upon the other codebtors. Section 8082, General Code. If, on the other hand, one or more of the codebtors of the debtor who has made settlement with his creditor are obliged to pay their common creditor more than his or their proportionate share of the common obligation remaining unpaid, he or they still have the right to call upon the codebtor, who has settled, for equitable contribution as to such overpayment. Section 8083, General Code; 9 Ohio Jurisprudence, 688, Section 16. Consequently,
 
 *556
 
 the other joint debtors are not released from their obligation because of a settlement between the creditor and one of their number, as at common law, for the reason that the statutes in question preserve to them the equivalent of their common-law right of contribution.
 

 But these statutes apply and apply only in cases where the codebtors are each liable in the same right for the payment of the whole obligation, and where, as a consequence, the right of contribution exists between them. No such situation exists, and the statutes cannot and do not apply, where one of the codebtors sustains the relationship of surety, guarantor or second in liability to the other codebtors in relation to the common obligation. "Where there is such relationship and the one who stands in the position of surety, guarantor or party secondarily liable to the other or others, is obliged to pay all or any part of the common obligation to their creditor, he is entitled to full indemnity or exoneration and reimbursement from the principal or the party primarily liable for the debt. Here the principle of contribution, to which the statutes above referred to relate, has no application whatsoever because the principal debtor owes the whole debt as between himself and his surety to the exoneration of the latter, In such case, when the creditor makes an absolute settlement with the principal debtor, discharging him from the obligation, the debtor secondarily liable is discharged because there can be no subrogation to the rights of the creditor against the principal for reimbursement — that right having been extinguished by settlement with and release of the principal debtor. Perhaps a more accurate statement would be that since the settlement with the principal debtor cannot affect the right of the debtor secondarily liable to indemnity and reimbursement from his principal, the settlement operates as a fraud against the principal debtor since he must remain liable for re
 
 *557
 
 imbursement to the surety or debtor secondarily liable. Of course, this does not mean that a right of contribution does not exist between cosureties.
 

 While an obligation in suretyship will not be implied and never arises by act of the parties except by express contract, yet the law will sometimes place a person, already bound upon some other contract, in the situation of surety by extending to him the privileges of this relationship. Thus where a lessee of a lease assigns it to one who covenants to pay the accruing rental to the landlord who has notice of the assignment, or where a vendor of land sells it subject to a mortgage which the vendee agrees to pay to the mortgagee who has notice of the terms of the sale, the lessee in the former case and the vendor-mortgagor in the latter case may insist that the rights of a surety be observed as to them. And there is no distinction between a suretyship created with the consent of the creditor and that which arises by operation of law. 1 Brandt on Suretyship
 
 &
 
 Guaranty (3 Ed.), 90, Section 37;
 
 Orrick
 
 v.
 
 Durham, 79
 
 Mo., 174.
 

 In Ohio, as elsewhere, the rule prevails that when a lease is assigned by the lessee, the assignee becomes the principal obligor for the payment of the rent thereafter accruing and the future performance of the covenants, and the lessee assumes the position of surety toward the lessor.
 
 Sutliff
 
 v.
 
 Atwood, supra; Columbus Gas & Fuel Co.
 
 v.
 
 Knox County Oil & Gas
 
 Co., 91 Ohio St., 35, 109 N. E., 529;
 
 Samuels
 
 v.
 
 Ottinger,
 
 169 Cal., 209, 212, 146 P., 638, 639, Ann. Cas. 1916E, 830, 831;
 
 In re Paramount Publix Corp.
 
 (C. C. A. 2), 85 F. (2d), 83, 86; 36 Corpus Juris, 373, Section 1227; 52 L. R. A. (N. S.), 973, note. Furthermore, this relationship is not affected by the circumstances that, judgment has been taken against the principal or surety, or both, on the common obligation. One who sustains the relation of surety on a debt may assert his rights as such, even after judgment has been
 
 *558
 
 entered against him.
 
 Dixon and Hawke
 
 v.
 
 Ewing’s Admrs.,
 
 3 Ohio, 280, 17 Am. Dec., 590;
 
 Commercial Bank of Lake Erie
 
 v.
 
 Western Reserve Bank,
 
 11 Ohio, 444, 448, 38 Am. Dec., 739;
 
 Hill
 
 v.
 
 King, Exr., 48
 
 Ohio St., 75, 26 N. E., 988.
 

 In the instant case, the defendant Savin, as lessee, assigned his lease to Garher who thereby became primarily liable to the lessor Gholson for the payment of rental which accrued after the assignment. Savin, as lessee, assumed the relationship of surety to Garber^ the assignee, and should Savin be obliged to pay to the lessor any part of the rental accruing after the assignment, he would then be in a position to maintain an action against Garber for full reimbursement. The doctrine of indemnification, and not that of contribution, must be applied to the factual situation in this case. The statutes above named have no application. They do not serve to avoid the effect of a settlement made by Gholson with Garber, so far as the continued liability of Savin is concerned, and the courts below were in error in so holding.
 
 Gillian
 
 v.
 
 McLemore,
 
 141 Miss., 253, 106 So., 99, 43 A. L. R., 79;
 
 Farmers’ Bank of Amsterdam
 
 v.
 
 Blair,
 
 44 Barb. (N. Y.), 641, 654.
 

 It is also claimed that Savin, though a surety, is not discharged through the settlement made with Garber because Gholson reserved the right to pursue Savin for the balance of the claim, which reservation is to be construed as a covenant not to sue. There are authorities which support this doctrine. Stearns Law of Suretyship (Feinsinger, 4 Ed.), 147, Section 102; 50 Corpus Juris, 116 and 183, Sections 196 and 302. However,- this rule has been criticized- and is always strictly applied.
 
 Spies, Exrx.,
 
 v.
 
 National City Bank,
 
 174 N. Y., 222, 66 N. E., 736, 61 L. R. A., 193.
 

 Referring to this rule, Mr. Williston, in volume 4, page 3524, Section 1230, of the revised edition of his work on contracts says:
 

 
 *559
 
 “Though these rules are settled, they seem inconsistent with the general rule that releasing or giving time to the surety [principal] discharges the principal [surety]; or, if not, at least to involve a very strained interpretation of language. The agreement between the creditor and the principal debtor, if reasonably interpreted, affects and varies the surety’s risk. If this is so, it is obvious that the agreement of the creditor and principal debtor with one another that they will increase the surety’s risk and that the creditor shall, nevertheless, hold him liable should have no effect. * * *
 

 “It is conceded in the cases that the reservation of rights against the surety can be valid only on the assumption that the rights of the surety also are reserved. It is often assumed that this involves merely the preservation to the surety of his right to enforce any direct obligation of indemnity running to him from the principal, but it must also involve the preservation of the right to enforce by way of subrogation the creditor’s claim against the principal. It is sometimes asserted that this is equivalent to saying that the agreement between creditor and principal is conditional on the assent of the surety and that since he may, if he chooses, pay the creditor and enforce the claim against the principal, he is not discharged. * * * But it must be said that to treat a reservation of rights as equivalent to this is artificial. A reasonable person in the position of the debtor might perhaps infer from a reservation of rights against the surety that the surety on being compelled to pay would have the direct right over against himself to which their relation gave rise, but he could hardly infer that the creditor’s right, against him would also be kept alive for the benefit of the surety.”
 

 The reasoning to support this rule is: First, that it rebuts the implication that the surety was meant to be discharged, which is one of the reasons why the surety is ordinarily exonerated by such a transaction;
 
 *560
 
 and, second, that the principal debtor, by agreeing to the reservation of the creditor’s rights against the surety, impliedly consents to the surety’s right of reimbursement against himself.
 
 Kearsley
 
 v.
 
 Cole,
 
 16 Meeson
 
 &
 
 Welsby, 128, 135, 153 Eng. Reprint, 1128;
 
 Kramer
 
 v.
 
 Morgan,
 
 85 F. (2d), 96.
 

 If by the terms of the release to the principal debtor he is fully discharged from the debt, .the reservation of the right to enforce the claim against the surety is ineffectual.
 
 Gustine
 
 v.
 
 Union Bank of Louisiana,
 
 10 Robinson (La.), 412;
 
 Webb
 
 v.
 
 Hewitt,
 
 3 Kay & Johnson, 438, 69 Eng. Reprint, 1181. To be effectual, it must appear from the reservation that the release is, in fact, a mere covenant not to sue, and not a discharge of the principal debtor. In fairness and honesty, the reservation agreement should in terms reserve not only the creditor’s right against the surety, but the surety’s right against the principal as well.
 
 Exchange Building & Investment Co.
 
 v.
 
 Bayless,
 
 91 Va., 134, 140, 141; Restatement of Contracts, 142, Section 122.
 

 In the opinion of the court, the contract for the release of Garber, the receipt of settlement, and the discharge in the form shown in the statement of facts herein, constitute an absolute release of claim against the principal debtor, Garber. The judgment against Garber was clearly released and discharged. The reservation did not relate to that judgment, but related solely to the separate judgment of G-holson against Savin in cause No. A-35993. If not released, Savin upon payment of the balance of the claim is entitled to be subrogated to the rights of the creditor Gholson in his judgment against Garber in cause No. A-36512.
 
 Dempsey
 
 v.
 
 Bush,
 
 18 Ohio St., 376;
 
 Hill
 
 v.
 
 King, Exr., supra; Hayes
 
 v.
 
 Ward,
 
 4 Johns. Ch. (N. Y.), 123, 8 Am. Dec., 554, 556. This judgment having been satisfied and discharged, Savin has been deprived of any right or interest in it. We are not here dealing with a situation such as would have been created had
 
 *561
 
 Gholson caused execution to be levied against Garber, resulting in only a partial satisfaction of that judgment. The situation here is one of full satisfaction of the judgment against Garber. While this full satisfaction was reached by a compromise settlement, nevertheless there is no part of that judgment left to be satisfied. From an examination of the contract and receipts in this case, it seems clear that it was the intention of the parties to release Garber unqualifiedly from further liability. If he was so released, Savin was, likewise, released. 21 Ruling Case Law, 1065, Section 107; 38 Ohio Jurisprudence, 533; 25 Harvard Law Review, 203.
 

 Finally, it is suggested that Garber’s release was void for want of consideration, and that since Garber, the principal, is not released, Savin in the position of surety is likewise still bound.
 

 At common law, the payment of a less sum of money, though agreed to be received in full satisfaction of a debt exceeding that amount, does not discharge the debt. The rule has been the object of frequent and severe criticism, as failing to take into consideration the practical importance of the difference between a right to a thing and the actual possession of it, and as serving to defeat the ends of justice rather than to promote them. 12 Harvard Law Review, 515, 525;
 
 Harper
 
 v.
 
 Graham,
 
 20 Ohio, 105;
 
 Jones
 
 v.
 
 Jones,
 
 8 C. D., 628, 15 C. C., 618, affirmed without opinion, 61 Ohio St., 665;
 
 Detroit Fire & Marine Ins. Co.
 
 v.
 
 Commercial Mut. Ins. Co.,
 
 1 Clev. L. Rep., 81,
 
 4
 
 Dec. Rep., 158, affirmed, 38 Ohio St., 11. See authorities cited in
 
 Adams Recreation Palace, Inc.,
 
 v.
 
 Griffith,
 
 58 Ohio App., 216, 16 N. E. (2d), 489.
 

 The solvency or insolvency of the debtor and his ability to pay, the exemptions which he may claim against the enforcement of the debt, as well as the annoyance and uncertainty of legal proceedings to
 
 *562
 
 enforce payment, should' furnish sufficient inducement, if not consideration, for a compromise settlement.
 

 Modern authorities hold that the slightest consideration is sufficient to support an agreement to release a debt upon the payment of a lesser sum. If the agreement to release has been actually performed and executed, as in this case, consideration becomes unimportant and a mere fiction which should not stand in the way of allowing the parties to compromise their differences on the basis of actualities rather than on the basis of cold logic. Since a person may, if he choose, make a gift to another, which when accepted will be irrevocable, a creditor may, on receiving a part of the debt, forgive the debtor the residue, and a receipt in full may be taken as evidence of such forgiveness.
 
 McKenzie
 
 v.
 
 Harrison,
 
 120 N. Y., 260, 8 L. R. A., 257;
 
 E. T. Gray & Sons
 
 v.
 
 Satuloff Bros.,
 
 213 Ala., 526, 105 So., 666;
 
 Flynn
 
 v.
 
 Hurlock,
 
 194 Pa., 462;
 
 Marysville Development Co.
 
 v.
 
 Hargis,
 
 41 Idaho, 257, 239 P., 522;
 
 Julian
 
 v.
 
 Gold,
 
 214 Cal., 74, 3 P. (2d), 1009;
 
 Dreyfus
 
 v.
 
 Roberts,
 
 75 Ark., 354, 5 Ann. Cas., 525;
 
 Ashley
 
 v.
 
 Hendee,
 
 56 Vt., 209;
 
 Johnson
 
 v.
 
 Cooke,
 
 85 Conn., 679, 84 A., 97;
 
 Aborn
 
 v.
 
 Rathbone,
 
 54 Conn., 444, 8 A., 677;
 
 Clayton, Admr.,
 
 v.
 
 Clark, Exr.,
 
 74 Miss., 499, 508, 509; 12 Harvard Law Review, 515, 521 to 531;
 
 Lindeke Land Co.
 
 v.
 
 Kalman,
 
 190 Minn., 601, 252 N. W., 650; 32 Michigan Law Review, 1001;
 
 Frye, Exr.,
 
 v.
 
 Hubbell,
 
 74 N. H., 358, 68 A., 325, 17 L. R. A. (N. S.), 1197;
 
 Vigelius
 
 v.
 
 Vigelius,
 
 169 Wash., 190, 13 P. (2d), 425;
 
 Chicago, Milwaukee & St. Paul Ry. Co.
 
 v.
 
 Clark,
 
 178 U. S., 353, 44 L. Ed., 1099, 20 S. Ct., 924.
 

 In the case at bar, the contract of release was not only in writing but was carried into an entry and made part of the court record. This was sufficient to constitute a complete release.
 
 Weddle
 
 v.
 
 Heath,
 
 211 Cal., 445, 295 P., 832;
 
 Reid
 
 v.
 
 Hibbard,
 
 6 Wis., 175;
 
 Beers
 
 v.
 
 Hendrickson,
 
 45 N. Y., 665.
 

 The judgments of the Court of Appeals and of tha
 
 *563
 
 Common Pleas Court are reversed and final judgment is entered for tlie appellant.
 

 Judgment reversed and final judgment for appellant.
 

 Turner, Williams and Matthias, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.
 

 Bettman, J., not participating.