William P. HENDERSHOT,
Appellant (Defendant),

v.

CHARLESTON NATIONAL BANK,
Appellee (Plaintiff).

No. 27A02–8807–CV–277.

Court of Appeals of Indiana,
Second District.

June 26, 1989.

C. Robert Rittman, Biddinger & Johnson, Marion, for appellant.

Michael J. Kiley, Kiley, Osborn, Kiley, Harker, Rogers, Michael & Certain, Marion, David L. Wyant, Shuman, Annand & Poe, Charleston, W.Va., for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant William Hendershot (Hendershot) appeals a judgment in favor of the Charleston National Bank (Bank) in its suit to recover on a loan to which he was a guarantor, claiming the trial court erred when it determined the Bank's compromise with the principal did not discharge him from his guaranty agreement.

We reverse.

## FACTS

The facts most favorable to the judgment reveal that Hendershot was the president of Mastercoach, Inc. (Mastercoach), a West Virginia corporation, when it entered into an agreement with the Bank (a West Virginia bank) to obtain a $1 million line of credit for the purpose of operating its business. Hendershot *personally* executed a guaranty agreement, for the line of credit, with the Bank, which provided:

"GUARANTY AGREEMENT

To the Charleston National Bank
Charleston, West Virginia

For valuable consideration, the receipt of which is hereby acknowledged and to induce the Charleston National Bank of Charleston, West Virginia (hereby called "Bank") to extend, refinance, continue to extend credit to and/or to purchase or acquire obligations owing by Mastercoach, Inc. of Huntington, WV (hereafter called "Debtor") at the special instance and request of the undersigned, and in consideration thereof, the undersigned hereby covenant, agree, and bind themselves promptly to pay to Bank, at maturity, all indebtedness and liabilities of Debtor now existing or hereafter incurred of every kind, nature and character including principal and interest arising out of an extension of credit or other transaction described as follows:

Floor plan line of credit in the amount of $1,000,000.00

and the *undersigned do hereby unconditionally guarantee* prompt payment to Bank at maturity, whether by acceleration or otherwise, or *any note or other evidence of indebtedness* including interest thereon and all *renewals, extensions, refinancings* and *modifications* (including increases in the interest rate) thereof, in whole or in part, however changed in form, manner or amount arising out of the extension of credit or other transaction described above.

Without limiting the preceding paragraph, this guarantee of prompt payment is made expressly applicable to that certain promissory note executed by Debtor bearing date     in the face amount of $     payable to the order of Bank including interest acruing thereon and all renewals, extensions, refinancings and modifications thereof, in whole or in part, however changed in form, manner or amount.

Bank shall not be obligated or required to proceed against the Debtor or proceed to sell or exhaust any collateral security or assets pledged to or held by it before proceeding against the undersigned for the payment of any indebtedness or liability guaranteed hereby.

Bank may release and discharge from liability any of the undersigned guarantors if there be more than one, or any other guarantor, endorser or surety for the payment of any indebtedness or liability guaranteed hereby without notice to, without the consent of and without affecting the liability of any of the undersigned hereunder not so released and discharged.

Bank may release, surrender, sell, exchange or otherwise deal with any property now or hereafter pledged to or held by Bank as security for or pertaining to any indebtedness or liability guaranteed hereby without notice to, without the consent of, and without affecting the liability of the undersigned hereunder.

Bank may proceed against the undersigned or, if more than one, any of them or all of them, with or without joining Debtor in any legal proceeding which may be instituted by it to enforce Debtor's obligation with respect to any indebtedness or liability guaranteed hereby, the liability of the undersigned being joint and several and, with respect to any note, payment of which is guaranteed hereby, the liability of the undersigned with respect thereto shall be to the same extent in all respects as if the undersigned had originally executed such note as maker thereof.

In addition to the indebtednesses and liabilities of Debtor guaranteed hereby, Bank may extend additional credit to or acquire other obligations of Debtor without notice to, without the consent of, and without affecting the liability of the undersigned hereunder.

*The undersigned do hereby expressly waive notice of and hereby consent to renewal, extension, refinancing and modification (including increases in the interest rate) of any note or other evidence of indebtedness secured hereby,* waive notice of acceptance hereof, and waive presentment, demand, protest, notice of non-payment and notice of dishonor relative to each note, indebtedness or liability guaranteed hereby.

In addition to all other amounts payable hereunder, the undersigned shall reimburse Bank on demand for all costs, attorneys' fees and other expenses reasonably incurred in the enforcement of the obligations created hereby.

Dated this 14 day of January, 1985
GUARANTORS
/s/ W.P. Hendershot"

*Record* at 59–60 (emphasis supplied).

Several months later Mastercoach filed a petition for a Chapter 11 reorganization bankruptcy in the United States Bankruptcy Court for the Southern District of West Virginia. The case was converted to a Chapter 7 liquidation bankruptcy when Hendershot left his position at Mastercoach and moved to Indiana.

The bankruptcy trustee for Mastercoach and the Bank negotiated a compromise on the Bank's claims against Mastercoach and on the trustee's claims against the Bank. The Bank's offer contained the following:

"Such settlement will constitute *full satisfaction of all claims* of Charleston National Bank against Mastercoach, Inc. and you as Trustee of Mastercoach, Inc., and full satisfaction of all claims by you, as Trustee of Mastercoach, Inc., and Mastercoach, Inc. against Charleston National Bank. Upon acceptance by you and the requisite approval by the appropriate court or courts, the parties will cause the above-captioned adversary proceedings to be dismissed with prejudice.

*Charleston National Bank hereby reserves its rights* and recourse *against* William P. *Hendershot* as guarantor of the debt to the extent not paid in full pursuant to this agreement."

*Record* at 66 (emphasis supplied). Thus, the Bank expressly reserved its rights to pursue Hendershot as the sole guarantor of the line of credit.

The bankruptcy court accepted the compromise and ordered the Bank to accept the provisions of the compromise as a full settlement of its claim against Mastercoach. The order, in pertinent parts, provided:

"ORDERED, that the compromise between the Charleston National Bank and the Trustee as described in the letter agreements attached hereto as Exhibit A be and it hereby is approved; and it is

FURTHER ORDERED, that the Trustee shall *pay to* Charleston National *Bank* $425,000 and Charleston National Bank shall accept $425,000 *in full settlement* of its $820,000 secured claim against the Debtor's estate. . . .

.     .     .     .     .

FURTHER ORDERED, that the above-captioned adversary proceedings be, and they hereby are, dismissed from the docket of the Court."

*Record* at 62–63 (emphasis supplied). The order left the Bank with a $393,549.91 deficiency on its loan to Mastercoach.

The Bank brought suit against Hendershot in Indiana to recover the deficiency and interest. After a non-jury trial, the trial court determined the compromise did not release Hendershot from his obligations as guarantor, and entered a judgment, including interest, in the amount of $513,970.06 against him.

## ISSUES

1.  Whether the law of Indiana or West Virginia is applicable?
2.  Whether the trial court erred when it determined the Bank's compromise with Mastercoach did not release Hendershot's guarantor obligations?

## DECISION

ISSUE ONE—Is Indiana or West Virginia law applicable?

PARTIES' CONTENTIONS—The Bank contends that under general choice of law rules, West Virginia law is applicable. Hendershot argues that because no application for the use of West Virginia law was made to the trial court, Indiana law must apply.

CONCLUSION—The law of Indiana applies.

The Bank's contention that West Virginia law should apply is untimely. Indiana has enacted the Uniform Judicial Notice of Foreign Law Act (hereinafter referred to as UJNFLA), Ind.Code 34-3-2 et seq., which provides that "reasonable notice shall be given to the adverse parties either in the pleadings or otherwise" when requesting the trial court to apply the law of another jurisdiction. IC 34-3-2-4 (1988).

▬ This court has decided that before a trial court can apply the laws of another state, a party must request that it do so, and further, there must be reasonable notice to the adverse parties before such an application can be granted. *Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334; *Jameson Chemical Co., Ltd. v. Love* (1980), Ind.App., 401 N.E.2d 41 (modified on other grounds). Failure to comply with the UJNFLA will result in the application of the law of Indiana, and therefore no choice of law decision is necessary. *Jameson Chemical Co., Ltd., supra.*

The Bank did not request the trial court to apply West Virginia law. Therefore we will apply the law of Indiana and of the United States as in any other case. *Jameson Chemical Co., Ltd., supra.* This conclusion is of little importance, however, as neither the laws of Indiana nor West Virginia are precisely on point.

ISSUE TWO—Did the Bank's settlement with Mastercoach release Hendershot from his guarantor obligations?

PARTIES' CONTENTIONS—It is Hendershot's position that because the compromise was a full settlement of the Bank's claim against Mastercoach, he is released

from his obligations as guarantor. The Bank says Hendershot consented to the compromise, because of the language of the guaranty agreement, and that it reserved its rights of recourse against Hendershot in the compromise agreement.

CONCLUSION—Hendershot was released from the guaranty agreement when the Bank settled its claim with Mastercoach.

Indiana cases have never decided the precise question before us, and rarely has it been considered in other jurisdictions. Recognizing that no court is an island unto itself we seek succor from other jurisdictions and the text writers.

■ We begin with the well-established rule that any change in the principal's contract, to which the guarantor or surety does not consent, will discharge the guarantor or surety from liability. *Franklin Bank & Trust Co. v. Reed* (1987), Ind., 508 N.E.2d 1256; *Lutz v. Frick Co.* (1962), 242 Ind. 599, 181 N.E.2d 14; *Indiana University v. Indiana Bonding & Surety Co.* (1981), Ind.App., 416 N.E.2d 1275, *trans. denied. See generally* 72 C.J.S. *Principal and Surety* § 102 (1987); 38 C.J.S. *Guaranty* § 72 (1943).

As the court in *Lutz* said:

"It is a sound and well-settled principle of law that sureties are not to be made liable beyond their contract and any agreement with the creditor, which varies essentially the terms of the contract, without the assent of the surety, will discharge him from responsibility."

*Lutz, supra* 242 Ind. at 602, 181 N.E.2d at 16.

■ This general rule of law, however, has a notable exception: When a transaction would normally discharge a surety or guarantor, the creditor can reserve its rights to proceed against the surety and *prevent* the discharge from taking effect. While this exception has never been applied in Indiana, it has engendered broad acceptance elsewhere. *See* 10 *Williston On Contracts* § 1230 (1967); 72 C.J.S. *Principal and Surety* § 121 (1987); Annotation *Creditors Reservation of Rights Against Surety in Releasing or Extending Time to Principal Debtor* 139 A.L.R. 85 (1942).

The general reasoning in support of this exception is that the inclusion of such a reservation in the agreement with the principal allows that agreement to be characterized as merely a covenant not to sue the principal debtor, and not a full release of the principal, and therefore does not affect the right of the surety to proceed against the principal. Thus the surety has not been impaired and is not discharged. *Meyn v. Schutte* (1959), N.Y.Sup.Ct., 20 Misc.2d 471, 186 N.Y.S.2d 965; *Moore v. Dark* (1958), 52 Wash.2d 555, 327 P.2d 429. *See also* 10 *Williston On Contracts* § 1230 (1967).

An important caveat to this exception, however, was enunciated by the Ohio Supreme Court in *Gholson v. Savin* (1941), 137 Ohio St. 551, 31 N.E.2d 858. The court decided:

"If by the terms of the release to the principal debtor he is fully discharged from the debt, the reservation of the right to enforce the claim against the surety is ineffectual. To be effectual, it must appear from the reservation that the release is, in fact, a mere covenant not to sue, and not a discharge of the principal debtor. In fairness and honesty, the reservation should in terms reserve not only the creditor's right against the surety, but the surety's right against the principal as well" [Citations omitted].

*Id.* at 560, 31 N.E.2d at 863.

The court in *Gholson* recognized that when the creditor fully settles his rights with the debtor, no rights have been preserved for the surety to assume. When a settlement is not merely a covenant not to sue, but a *final release* of the creditor's rights, the reasoning in support of the exception has no vitality. The surety is impaired because he has no subrogated rights preserved with which to pursue the principal debtor, if there is a final and full release. The reservation under such circumstances does not prevent the surety from being discharged. This caveat, while little used, is generally recognized. It is finely

put in 72 C.J.S. *Principal and Surety* § 121 (1987); Annotation *Creditors Reservation of Rights Against Surety in Releasing or Extending Time to Principal Debtor* 139 A.L.R. 85 (1942).

> "The courts manifest no hesitancy to acknowledge that if the arrangement between the creditor and the principal debtor in fact effects an absolute release of the latter in satisfaction of the indebtedness as originally contracted, an attempt to reserve remedies against the surety will be ineffective to prevent his discharge, because of the absence of any obligation formerly and still existing to which the reservation can attach."

139 A.L.R. at 108.

■ And so it is here. The compromise between the Bank and Mastercoach constituted a full settlement, and not merely a covenant not to sue. The compromise was reached as a settlement of two separate adversary proceedings in the bankruptcy court, in the Bank's proceeding against Mastercoach on the line of credit, and the trustee's proceeding against the Bank to declare the taking of a manufacturer's certificate of origin a preference and to declare the Bank an unsecured creditor. *Record* at 68, joint exhibit 4, pages 8–10. The compromise was formed by several letters exchanged between the Bank and the trustee, which were included as exhibits to the bankruptcy court's order. *Record* at 61–67. One such letter contained the following:

> "Such settlement will constitute *full satisfaction of all claims* of Charleston National Bank against Mastercoach, Inc. and you as Trustee of Mastercoach, Inc., and full satisfaction of all claims by you, as Trustee of Mastercoach, Inc., and Mastercoach, Inc. against Charleston National Bank. Upon acceptance by you and the requisite approval by the appropriate court or courts, the parties will cause the above-captioned adversary proceedings to be dismissed with prejudice. Charleston National Bank hereby reserves its rights and recourse against William P. Hendershot as guarantor of

the debt *to the extent not paid in full* pursuant to this agreement."

*Record* at 66 (emphasis supplied).

The order of the bankruptcy court contained the following language:

> "FURTHER ORDERED, that the Trustee shall pay to Charleston National Bank $425,000 and Charleston National Bank shall accept $425,000 *in full settlement of its $820,000 secured claim* against Debtor's estate ..."

*Record* at 62 (emphasis supplied). Clearly, no rights were reserved *by the Bank against Mastercoach,* so the settlement cannot reasonably be construed as merely a covenant not to sue Mastercoach. Further, the order of the bankruptcy court dismissed the adversary proceedings. *Record* at 63.

The Bank argues that the compromise did not constitute a full settlement because it specifically reserved its rights against Hendershot. The face of the order, along with the fact the adversary proceedings were dismissed, does not support this contention. As the court in *Gholson* recognized, "[i]n fairness and honesty, the reservation agreement should in terms reserve not only the creditor's right against the surety, *but the surety's right against the principal as well." Gholson, supra,* at 560, 31 N.E.2d at 863. (Emphasis supplied.) The bankruptcy court obviously did not reserve any of *Hendershot's* rights against Mastercoach when it ordered the Bank to accept the compromise as a *full settlement* of its claim. Obviously the *court* considered the Bank's claim fully settled.

Lastly, the Bank apparently asserts that under the terms of the guaranty agreement, the compromise does not release Hendershot from his obligations as guarantor. The plain language of the contract, however, does not support this assertion.

■ The extent of a guarantor's liability is determined by his contract, which is interpreted using the standard rules applicable to other contracts. *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379. When interpreting contracts, this court will determine the intent of the parties at the

time the contract was made as evidenced by the language used in the contract to express the rights and duties of the parties. *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291, *trans. denied; Loudermilk, supra.*

The relevant portions of the guaranty agreement are:

"*Bank may release,* surrender, sell, exchange or otherwise deal with *any property* now or hereafter pledged to or held by Bank as security for or pertaining to any indebtedness or liability guaranteed hereby without notice to, *without the consent* of, and without affecting the liability of the undersigned hereunder.

. . . . .

In addition to the indebtednesses and liabilities of debtor guaranteed hereby, Bank may extend additional credit to or acquire other obligations of debtor without notice to, without the consent of, and without affecting the liability of the undersigned hereunder.

*The undersigned do* hereby expressly waive notice of and *hereby consent to renewal, extension, refinancing and modification (including increases in the interest rate)* of any note or other evidence of indebtedness secured hereby, waive notice of acceptance hereof, and waive presentment, demand, protest, notice or non-payment and notice of dishonor relative to each note, indebtedness or liability guaranteed hereby."

*Record* at 60.

While the contract does give prior consent to any renewal, extension, refinancing, or modification of the underlying agreement, it does not impose consent for a *release of the principal.* A release of the principal is not merely a modification of the underlying agreement. The guaranty contract clearly distinguishes between a release of *property* pledged as security, and a modification of the underlying agreement. The parenthetical included after the use of "modification" in the guaranty agreement is illustrative of what the parties intended "modification" to encompass: A change in the terms of the underlying agreement, like the interest rate, not a

release of the principal's liability. We must conclude that the guaranty agreement does not supply Hendershot's prior consent to the compromise with Mastercoach that fully released Mastercoach as principal debtor. His consent was not waived by the guaranty agreement.

To recapitulate: a surety is discharged from any further liability if the principal debtor is fully released by the creditor. An explicit reservation of rights by the creditor against the surety is ineffective when the creditor's release of the principal cannot be characterized as merely a covenant not to sue the principal.

Judgment reversed.

SULLIVAN and ROBERTSON, JJ., concur.