**William P. HENDERSHOT, Appellant (Defendant Below),**

v.

**CHARLESTON NATIONAL BANK, Appellee (Plaintiff Below).**

No. 27S02–9011–CV–746.

Supreme Court of Indiana.

Nov. 27, 1990.

C. Robert Rittman, Biddinger & Johnson, Marion, for appellant.

Michael J. Kiley, Kiley, Osborn, Kiley, Harker, Rogers, Michael & Certain, Marion, David L. Wyant, Shuman, Annand & Poe, Charleston, W. Va., for appellee.

SHEPARD, Chief Justice.

This case presents an issue of first impression: whether a guarantor or surety[1] is released from his obligation when a creditor settles with and releases the primary obligor while specifically reserving its right of recourse against the guarantor. We hold that the guarantor is not released from his obligation.

William P. Hendershot was president, chief executive officer and majority shareholder of Mastercoach, Inc., a West Virginia corporation engaged in the business of van conversion. On January 14, 1985, Mastercoach entered into a written floor plan security agreement with the Charleston National Bank. The agreement provided Mastercoach with a one million dollar line of credit from the Bank for the purchase of inventory. Hendershot executed a sweeping guaranty agreement on the same day, promising to guarantee personally the performance of Mastercoach under the floor plan security agreement. *See* Appendix *infra.*

By signing the agreement, Hendershot agreed to "unconditionally guarantee prompt payment to Bank at maturity, whether by acceleration or otherwise, o[f] any note or other evidence of indebtednes[s] including interest thereon and all renewals, extensions, refinancings and modifications (including increases in the interest rate), thereof, in whole or in part, however chang'ed in form, manner or amount arising out of the extension of credit." He also "expressly waive[d] notice of and consent[ed] to renewal, extension, refinancing and modification (including increases in the interest rate) of any note or other evidence of indebtedness secured" by the guaranty agreement.

About two months after the floor plan agreement and guaranty were executed, Mastercoach filed a petition for a Chapter 11 reorganization bankruptcy in the United States Bankruptcy Court for the Southern District of West Virginia. The case was converted to a Chapter 7 liquidation bankruptcy after Hendershot left his position at Mastercoach and moved to Indiana.

The Bank and the bankruptcy trustee for Mastercoach negotiated a compromise of their respective claims. The Bank's letter offering compromise included the following language:

Such settlement will constitute *full satisfaction of all claims* of Charleston National Bank against Mastercoach, Inc. and you as Trustee of Mastercoach, Inc., and full satisfaction of all claims by you as Trustee of Mastercoach, Inc., and Mastercoach, Inc. against Charleston National Bank. Upon acceptance by you and the requisite approval by the appropriate court or courts, the parties will cause the above-captioned adversary proceedings to be dismissed with prejudice. *Charleston National Bank hereby reserves its rights and recourse against William P. Hendershot as guarantor of the debt to the extent not paid in full pursuant to this agreement.*

---

**1.** The Restatement of Securities identifies surety and guarantor as synonymous terms. Restatement of Securities § 82 comment g (1941). We will do the same in this opinion.

Record at 66 (emphasis added). The bankruptcy court accepted the compromise. The court's order stated in pertinent part:

> ORDERED, that the compromise between the Charleston National Bank and the Trustee as described in the letter agreements attached hereto as Exhibit A be and it hereby is approved; and it is
>
> FURTHER ORDERED, that the Trustee shall pay to Charleston National Bank $425,000 and Charleston National Bank shall accept $425,000 in full settlement of its $820,000 secured claim against the Debtor's estate....

Record at 62. This order left the Bank with a $393,549.91 deficiency on the loan to Mastercoach.

The Bank then sued Hendershot in Indiana to recover the deficiency and accrued interest. After a bench trial, the trial court found that the compromise agreement did not release Hendershot from his obligation as guarantor and entered a judgment against him for $513,970 including interest. The Court of Appeals reversed, holding that "a surety is discharged from any further liability if the principal debtor is fully released by the creditor. An explicit reservation of rights by the creditor against the surety is ineffective when the creditor's release of the principal cannot be characterized as merely a covenant not to sue the principal." *Hendershot v. Charleston National Bank* (1989), Ind.App., 540 N.E.2d 615, 621. We grant transfer.

■ It is a sound and well-settled principal of law that sureties are not to be made liable beyond their contract and that any agreement with the creditor which varies essentially the terms of the contract without the assent of the surety will discharge the surety from responsibility. *Lutz v. Frick Co.* (1962), 242 Ind. 599, 181 N.E.2d 14.

■ Section 122 of the Restatement of Securities articulates a generally accepted exception to the rule:

> Where the creditor releases a principal, the surety is discharged, unless
>
> (a) the surety consents to remain liable not withstanding the release, or
>
> (b) the creditor in the release reserves his rights against the surety.

Restatement of Securities § 122 (1941). If the creditor reserves his rights against the surety, the release of the principal will be construed as a covenant not to sue the principal. The creditor's action will have the effect of notifying the principal that, in spite of the release, the surety may pay the debt and then come to him seeking reimbursment. Restatement of Securities § 122 comment d.

■ Hendershot argues that this compromise agreement cannot be construed as a covenant not to sue because "the plain simple and ordinary interpretation of the words of [the Bank's letter of] offer and the subsequent Order Approving Compromise by the bankruptcy court are a final and complete release of the principal debtor upon the receipt of 'full satisfaction' of the creditor's claims." Appellant's Brief in Opposition to Transfer at 5. The Court of Appeals, relying on the Ohio case of *Gholson v. Savin*[2], agreed with Hendershot saying:

> The court in *Gholson* recognized that when the creditor fully settles his rights with the debtor, no rights have been preserved for the surety to assume. When a settlement is not merely a convenant not to sue, but a *final release* of the creditor's rights, the reasoning in support of the exception [articulated in § 122(b)] has no vitality. The surety is impaired because he has no subrogated rights preserved with which to pursue the principal debtor, if there is a final and full release. The reservation under

---

**2.** 137 Ohio St. 551, 31 N.E.2d 858 (1941). *Gholson* was litigated before the Restatement of Securities was adopted. As far as we can tell, the intervening half century of caselaw has followed the Restatement and not *Gholson*. *See, e.g., Security Nat'l Bank v. Continental Ins. Co.,* 586 F.Supp. 139 (D.Kan.1982); *Warner Lambert Pharmaceutical Co. v. Sylk,* 348 F.Supp. 1039 (E.D.Pa.1971), *aff'd without opinion,* 475 F.2d 1398 (3rd Cir.1973); *Continential Bank & Trust Co. v. Akwa,* 58 Wis.2d 376, 206 N.W.2d 174 (1973).

such circumstances does not prevent the surety from being discharged. *Hendershot*, 540 N.E.2d at 619.

■ We believe that focusing on words like "full satisfaction" and "final release" in an agreement between creditor and debtor wrongly ignores the reservation of rights against the surety. When the creditor clearly reserves his rights against the surety, the debtor is notified that the release is no more than a covenant not to sue. Consequently, the principal debt remains alive, the surety's rights to reimbursment and subrogation are unimpaired, and the surety is not discharged. *Warner Lambert Pharmaceutical Company v. Sylk*, 348 F.Supp. 1039, 1044–45 (E.D.Pa.1971); 10 S. Williston, *A Treatise on the Law of Contracts* § 1230 (3rd ed. 1967).

The Bank explicitly reserved its rights against Hendershot in its offer to compromise. The letter containing this offer was incorporated into the compromise agreement. Hendershot's legal rights to reimbursement and subrogation were not impaired by the agreement, and he is not discharged.

We vacate the opinion of the Court of Appeals and affirm the judgment of the trial court.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., dissents with opinion.

### APPENDIX

The guaranty agreement which Hendershot signed provided:

### GUARANTY AGREEMENT

To the Charleston National Bank
Charleston, West Virginia

For valuable consideration, the receipt of which is hereby acknowledged and to induce the Charleston National Bank of Charleston, West Virginia (Hereby called "Bank") to extend, refinance, continue to extend credit to and/or to purchase or acquire obligations owing by Mastercoach, Inc. of Huntingon, WV (hereafter called "debtor") at the special instance and request of the undersigned, and in consideration thereof, the undersigned hereby convenant, agree, and bind themselves promptly to pay to bank, at maturity, all indebtedness and liabilities of debtor now existing or hereafter incurred of every kind, nature and character including principal and interest arising out of an extension of credit or other transaction described as follows:

Floor plan line of credit in the amount of $1,000,000.00

and the undersigned do hereby unconditionally guarantee prompt payment to bank at maturity, whether by acceleration or otherwise, or any note or other evidence of indebtednes [sic] including interest thereon and all renewals, extensions, refinancings and modifications (including increases in the interest rate) thereof, in whole or in part, however changed in form, manner or amount arising out of the extension of credit or other transaction described above.

Without limiting the preceding paragraph, this guarantee of prompt payment is made expressly applicable to that certain promissory note executed by debtor bearing date in the face amount of $ payable to the order of bank including interest acruing [sic] thereon and all renewals, extensions, refinancings and modifications thereof, in whole or in part, however changed in form, manner or amount.

Bank shall not be obligated or required to proceed against the debtor or proceed to sell or exhaust any collateral security or assets pledged to or held by it before proceeding against the undersigned for the payment of any indebtedness or liability guaranteed hereby.

Bank may release and discharge from liability any of the undersigned guarantors if there be more than one, or any other guarantor, endorser or surety for the payment of any indebtedness or liability guaranteed hereby without notice to, without the consent of and without affecting the liability of any of the undersigned hereunder not so released and discharged.

Bank may release, surrender, sell, exchange or otherwise deal with any property now or hereafter pledged to or held by bank as security for or pertaining to any indebtedness or liability guaranteed hereby without notice to, without the consent of, and without affecting the liability of the undersigned hereunder.

Bank may proceed against the undersigned or, if more than one, any of them or all of them, with or without joining debtor in any legal proceeding which may be instituted by it to enforce debtor's obligation with respect to any indebtedness or liability guaranteed hereby, the liability of the undersigned being joint and several and, with respect to any note, payment of which is guaranteed hereby, the liability of the undersigned with respect thereto shall be to the same extent in all respects as if the undersigned had originally executed such note as maker thereof.

In addition to the indebtednesses and liabilities of debtor guaranteed hereby, bank may extend additional credit to or acquire other obligations of debtor without notice to, without the consent of, and without affecting the liability of the undersigned hereunder.

The undersigned do hereby expressly waive notice of and hereby consent to renewal, extension, refinancing and modification (including increases in the interest rate) of any note or other evidence of indebtedness secured hereby, waive notice of acceptance hereof, and waive presentment, demand, protest, notice or [sic] non-payment and notice of dishonor relative to each note, indebtedness or liability guaranteed hereby.

In addition to all other amounts payable hereunder, the undersigned shall reimburse bank on demand for all costs, attorneys' fees and other expenses reasonably incurred in the enforcement of the obligations created hereby.

Dated this 14 day of January, 1985

GUARANTORS
/s/ W.P. Hendershot

Record at 59–60.

PIVARNIK, Justice, dissenting.

I dissent to the holding of the majority that the guarantor is not released from his obligation. I would deny transfer or grant transfer and affirm the Court of Appeals as I feel it reached a proper result considering the facts and circumstances of this case.

Judge Buchanan, writing for the majority, acknowledged the application of Section 122(b) of the *Restatement of Securities* which provides that where the creditor releases a principal debtor the surety is discharged unless the creditor in the release reserves his rights against the surety. As Judge Buchanan pointed out, this contemplates that all of the rights of the surety against the principal are preserved pursuant to the contract originally entered into by the parties. The creditor merely saying that he reserves the right to proceed against the surety is not effective if the actual agreement the creditor enters into in settlement with the principal debtor amounts to a full release that does not preserve in the surety his rights against the principal. *Hendershot v. Charleston Nat'l Bank* (1989), Ind.App., 540 N.E.2d 615, 619.

As the Ohio Supreme Court stated in *Gholson v. Savin* (1941), 137 Ohio St. 551, 560, 31 N.E.2d 858, 863, "In fairness and honesty, the reservation agreement should in terms reserve not only the creditor's right against the surety, but the surety's right against the principal as well." If the settlement agreement between the creditor and the principal can be construed as a covenant not to sue then all the rights of the surety are, in fact, preserved, since his rights to reimbursement and subrogation are unimpaired. Although he finds himself in an undesirable situation, he faces the responsibility he contracted to assume. That, however, is not what happened in this case as the Court of Appeals clearly pointed out.

The order of the bankruptcy court dismissed the adversary proceedings in its final order. It further provided:

> Further ordered, that the Trustee shall pay to Charleston National Bank $425,-000 and Charleston National Bank shall accept $425,000 *in full settlement* of its $820,000 secured claim against the Debtor's estate. . . .

*Record* at 62 (emphasis added). This is more than a covenant not to sue. This is a full release of the $820,000 obligation of the principal to the debtor. The surety has no subrogated rights reserved with which to pursue the principal debtor because the principal debtor no longer has obligation to the creditor. Citing authority to be found at 139 A.L.R. 84, 108 (1942) the Court of Appeals quoted:

> The courts manifest no hesitancy to acknowledge that if the arrangement between the creditor and the principal debtor in fact effects an absolute release of the latter in satisfaction of the indebtedness as originally contracted, an attempt to reserve remedies against the surety will be ineffective to prevent his discharge, because of the absence of any obligation formerly and still existing to which the reservation can attach.

540 N.E.2d at 620. We should not hesitate to follow this sound reasoning in the instant case in which the facts are not in dispute and demonstrate a full release.